IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA

CASE NO.: 16-cv-25217-SCOLA/OTAZO-REYES

DARA CLARKE

     Plaintiff,

v.

CHARLES PHELAN, individually, GARY COHEN,
individually and as Successor Trustee of Trust No. 75-LT-21,
PRIVE DEVELOPERS, LLC, a Florida Limited Liability Corp.,
TWO ISLANDS DEVELOPMENT CORP.,
a Florida Corporation, BH3 REALTY, LLC,
a Florida Limited Liability Corp., NI HOLDINGS, LLC,
a Florida Limited Liability Corp., LAST LOT CORP.,
NOMUR HOLDINGS, LLC, a Limited Liability Corp.,
DANIEL LEBENSOHN, individually,
a Florida Corporation, THE CITY OF AVENTURA,
a Florida Municipality, TERRY SCOTT,
individually, JOSEPH CRAIG, individually

     Defendants.

_____/

## AMENDED COMPLAINT[1]

     Plaintiff DARA CLARKE, by and through undersigned counsel, hereby sues Defendants

CHARLES PHELAN, individually, GARY COHEN, individually and as Successor Trustee of

Trust No. 75-LT-21, PRIVE DEVELOPERS, LLC, a Florida Limited Liability Corp., TWO

ISLANDS DEVELOPMENT CORP., a Florida Corporation, BH3 REALTY, LLC, a Florida

Limited Liability Corp., NI HOLDINGS, LLC, a Florida Limited Liability Corp., LAST LOT

CORP., a Florida Corporation, NOMUR HOLDINGS, LLC, a Limited Liability Corporation,

DANIEL LEBENSOHN, individually, THE CITY OF AVENTURA, a Florida Municipality,

---

[1] This Amended Complaint is being filed "as a matter of course" pursuant to Fed. R. Civ. P. 15(a)(1)(B).  The City's
Motion to Dismiss [D.E. 4] was filed on December 19, 2016 and therefore, this filing is within the 21 day time
period allotted pursuant to Fed. R. Civ. P. 15(a)(1)(B).

TERRY SCOTT, individually, JOSEPH CRAIG, individually, and in support thereof alleges as follows:

## NATURE OF THE ACTION

1.      This is a case about a group of Developers that will stop at nothing to generate a profit and a City that will either turn a blind eye to its misconduct or conspire to assist it in reaching its goals.

2.      As will be described below, CHARLES PHELAN, individually, GARY COHEN, individually and as Successor Trustee of Trust No. 75-LT-21, PRIVE DEVELOPERS, LLC., a Florida Limited Liability Corp., TWO ISLANDS DEVELOPMENT CORP., a Florida Corporation, PRIVE DEVELOPERS, LLC, a Florida Limited Liability Corp., BH3 REALTY, LLC, a Florida Limited Liability Corp., NI HOLDINGS, LLC, a Florida Limited Liability Corp., and LAST LOT CORP., a Florida Corporation NOMUR HOLDINGS, LLC, a Limited Liability Corporation, (collectively described as the "Developer Defendants"), are the Developers of a project known as "Prive at Island Estates," which is a two tower 16 story condominium located in Aventura, Florida.  In order to construct these towers, the Developer Defendants were required by the City of Aventura to construct a sidewalk on an adjoining island known as "Island Estates."  As such, the Developer Defendants began construction on property owned by the Plaintiff, DARA CLARKE, without her authorization.  When CLARKE took steps to protect her constitutional property rights, the Developer Defendants made false accusations to the Aventura Police Department, which resulted in her arrest.

3.      Defendants, THE CITY OF AVENTURA, a Florida Municipality, TERRY SCOTT, individually, JOSEPH CRAIG, individually (collectively known as "the Aventura Defendants") appeared in response to the Developer Defendants' false allegations.  When

effectuating CLARKE's arrest, SCOTT and CRAIG unlawfully and deliberately used excessive force causing injuries to CLARKE, despite the lack of any threat or the commission of a crime, in violation of well-established law.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1983 and subject matter jurisdiction over the state law claims.

5.      Plaintiff seeks damages in excess of one million dollars ($1,000,000.00), exclusive of attorney's fees and costs.

6.      Venue is proper under § 47.011 as the Defendants reside in Miami-Dade County and the events or omissions giving rise to Plaintiff's claims occurred in Miami-Dade County.

## PARTIES

7.      Plaintiff, DARA CLARKE, is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.  CLARKE is the owner of a home in a development known as Island Estates. CLARKE has resided in Miami-Dade County for twenty years and throughout that time has been involved in many charitable and philanthropic organizations.  Further, CLARKE was previously employed as an Assistant State Attorney and has never had a confrontation with police.

8.      Defendant, CHARLES PHELAN, is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

9.      Defendant, GARY COHEN, is a resident of Miami-Dade County, Florida and is otherwise *sui juris*. In addition, COHEN, as Successor Trustee of Trust No. 75-LT-21, is the owner of the northernmost of two adjacent islands located in Dumfounding Bay in the City of Aventura.

10.     Defendant, PRIVE DEVELOPERS, LLC, is a Florida Limited Liability Company organized under the laws of the State of Florida, with its principal place of business located in Miami-Dade County.

11.     Defendant, TWO ISLANDS DEVELOPMENT CORP, is a Florida Corporation organized under the laws of the State of Florida, with its principal place of business located in Miami-Dade County.

12.     Defendant, BH3 REATLY, LLC, is a Florida Limited Liability Company organized under the laws of the State of Florida, with its principal place of business located in Miami-Dade County.

13.     Defendant, NI HOLDINGS, LLC, is a Florida Limited Liability Company organized under the laws of the State of Florida, with its principal place of business located in Miami-Dade County.

14.     Defendant, LAST LOT CORP., is a Florida Corporation organized under the laws of the State of Florida, with its principal place of business located in Miami-Dade County.

15.     Defendant, NOMUR HOLDINGS, LLC, a Florida Limited Liability Company organized under the laws of the State of Florida, with its principal place of business located in Miami-Dade County.

16.     Defendant, DANIEL LEBENSOHN, is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.  LEBENSOHN is also a principal of BH3 REALTY, LLC.

17.     Defendant, CITY OF AVENTURA, is a municipal entity of the State of Florida. The City operates and controls and Aventura Police Department (hereinafter referred to as "APD"), its police officers, employees, agents and representatives, including, but not limited to, Officers Scott and Craig.

18.     Defendant, TERRY SCOTT, was and is, at all times material, a police officer for the APD and was acting within the course and scope of his employment with the APD. Defendant SCOTT is being sued in his individual capacity and his official capacity for acts taken as a police officer for the APD.   Upon information and belief, Sergeant Scott has received (six) 6 complaints since being hired in 1997, which include two (2) prior excessive use of force complaints and three (3) complaints for upon conduct unbecoming of an officer.

19.     Defendant, JOSEPH CRAIG was and is, at all times material, a police officer for the APD and was acting within the course and scope of his employment with the APD. Defendant CRAIG is being sued in his individual capacity and his official capacity for acts taken as a police officer for the APD.  Upon information and belief, Officer Craig has received twenty eight (28) complaints since being hired in 1999, which include seven (7) prior excessive/unnecessary use of force complaints, one (1) perjury allegation, and  (5) complaints for conduct unbecoming of an officer.

20.     At all times material hereto, PHELAN and COHEN were acting on their individual behalf and in furtherance of the interests of the Developer Defendants as their agents.

21.     All conditions precedent to bringing this lawsuit have been complied with.

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

22.     In March 2013, the Defendant Developers began their efforts develop a two-tower condominium development known as "Prive at Island Estates."

23.     However, before they were permitted to begin construction, the CITY OF AVENTURA required the Developer Defendants to comply with certain sidewalk requirements arising from conditions placed by the City through a variance when the South Island was developed.

24.    In December 2013, TI DEVELOPMENT, the prior developer of the South Island, applied for a permit to construct a four-foot paver sidewalk on the South Island.

25.    The permit sought to have the intended sidewalk constructed on property owned by the individual homeowners, including CLARKE.

26.    Notwithstanding CLARKE's clear and indisputable rights arising from the fee simple ownership of her property, the City of Aventura, through its City Attorney, David Wolpin, approved the permit under the guise of a purported utility easement.  This improper permit impermissibly violated DARA CLARKE's property rights as the Defendant Developers are not a utility company and the permit was issued solely for the Defendant Developers' pecuniary gain.

27.    In furtherance of the Defendant Developers' and the City of Aventura's effort to violate CLARKE's property rights, a purported Covenant of Indemnification was created.  *See* Exhibit "A."   Under the Covenant, which was created by Wolpin, Eric Soroka (the City Manager), and COHEN's attorneys, the CITY OF AVENTURA was required to provide its unfettered support to the Defendant Developers in their pursuit to violate CLARKE's property rights in exchange for the Defendants Developer's promise to pay the City's attorney's fees in connection with any claims related to the illegal sidewalk.

28.    The Covenant was executed by the Commission at the insistence of Wolpin after misleading them as to location of the sidewalk and the nature of the indemnification. The Agreement provides, in pertinent part:

>    2.    Except as otherwise expressly provided herein, [Last Lot Corp. and Two Islands Development] agrees to defend, indemnify and hold the City harmless from any claim, demand, suit, loss, cost, expense or damage which may be asserted, claimed, or recovered against or from City (and its officers, agents, servants and employees) solely by reason of any property damage or bodily

injury, including death, sustained by any person whomsoever, which said claim, demand, suit, loss, cost, expense or damage for property damage or bodily injury arises out of or is related to the construction or maintenance of the Sidewalk or construction of the proposed multi-family development of the North Island …

*****

The City may not settle or offer to settle (unless is elects to do so on its own discretion and at its sole cost) any alleged claim, demand, suit, loss, cost, expense or damage that it maintains is covered under the indemnity obligations under the Covenant without first obtaining [Last Lot Corp. and Two Islands Development]'s written consent …

*****

6.   The City and [Last Lot Corp. and Two Islands Development] agree to fully cooperate with each other pursuant to this Covenant and they further recognize that time of the essence in all aspects of this Covenant.

It is expressly recognized by the City and [Last Lot Corp. and Two Islands Development] that the issuance of any building permit for the Sidewalk (and/or any challenge to the issuance of such building permit or any other challenge in connection with the Sidewalk, brought or filed by any other person) shall not in any way delay, hinder, or otherwise affect the ongoing review and processing of approvals and building permits for the proposed multi-family development on the North Island…

*See* Exhibit "A."

29.    Clearly, the CITY OF AVENTURA ignored its duty to act in the best interests of its citizens and instead aligned itself with the whims of the Developer Defendants.   This Agreement, which is more akin to a retainer agreement, further demonstrates the corrupt and malicious nature of the Defendant Developers' conduct.

30.     On August 19, 2014, CLARKE, along with several other homeowners at Island Estates, initiated a lawsuit styled *David L. Clarke, et al. v. Two Islands Development Corp. et al.*, Case No. 2014-021513-CA-01, 11th Circuit Court, Miami-Dade County, Florida, seeking, *inter*

*alia*, to prevent the construction of the illegal sidewalk with the case style of seeking to prevent the construction of the illegal sidewalk.

31.     On September 22, 2014, The Honorable Jerald Bagley entered an Order granting a motion for temporary injunction, which had the effect of precluding the Developer Defendants from constructing the illegal sidewalk on property owned by CLARKE and similarly situated homeowners.  *See* Exhibit "B."

32.     In the September 22, 2014 Order, the Court recognized Plaintiff's inalienable property right and found:

> It is likely that the Plaintiffs will suffer irreparable harm if Defendants are permitted to trespass upon Plaintiffs' property to construct the proposed sidewalk. Plaintiffs have established that a sidewalk is not a public utility; and therefore, it is not an authorized use of a utility easement. § 177.031 (7)(a)(b) & § 177.09(16), Fla. S tat. Further, the "Declaration" and plat do not permit the building of a sidewalk in the utility easement because it fails to describe a sidewalk as a utility. Additionally, Plaintiffs face the exposure to claims of liability in personal injury cases involving persons walking across Plaintiffs' land on the unwanted sidewalk. The proposed sidewalk will also deprive Plaintiffs of their inalienable property rights to use all portions of their property as they see fit, and it will take away Plaintiffs' right to peace and tranquility in their property by allowing strangers to cross their property on a sidewalk and/or for the Developer to use the land for its own purposes. The proposed taking and alteration of the use of Plaintiffs' land constitutes further irreparable injury.

*Id.*

33.     On appeal, however, the Trial Court's order was reversed based upon a procedural error in that the trial court denied an *ore tenus* motion to include certain indispensable parties at the bond hearing and remanded for further proceedings.  *See* Exhibit "C."  Notably, the Third District did not comment or reverse the Trial Court's determination that Plaintiff's established property rights were being violated through the Developer Defendants' construction efforts.

34.     On February 26, 2015, and within one day of the Third District's reversal (and before the mandate was issued), the Defendant Developers began construction efforts on the illegal sidewalks.  It was the Developer Defendants' intent to rush the sidewalk to completion before a new hearing could be conducted because a temporary injunction cannot issue if the work was already completed.

35.     In order to carry out its plan, the Developer Defendants enlisted the assistance of officers employed by the Aventura Police Department, including Chief Steinberg. Several officers were privately hired by the Developer Defendants in order to oversee the construction efforts on that day[2].   The "construction" included the operation of multiple tow trucks that that began towing cars located on their owners' property. These acts were at the direction of the APD and the Developer Defendants.

36.     While the construction efforts continued, CLARKE took steps to protect her own property rights and those of her neighbors by calmly sitting on the neighbor's property line in order to prevent the construction crew from completing the illegal sidewalk.  CLARKE's action incensed the Developer Defendants in that it prevented them from completing the illegal construction.  While CLARKE was at the scene of the illegal construction, PHELAN specifically told the APD that they needed more staff on site.

37.     Ultimately, CLARKE decided to leave the area and the construction crews hastily worked to complete construction.

38.     That evening, CLARKE and her husband returned to their home, which was undergoing renovations at the time.

----

[2] Subsequent to the events described in the Complaint, a memorandum was sent out by the City which precluded any of its officers from working private detail in the future.

39.     CLARKE's vehicle, a blue BMW, was parked at a marina located within the development.

40.     Upon returning to their property, CLARKE'S husband drove his vehicle, a Cayenne SUV, on the swale located in front of their home, which had the effect of damaging the newly constructed illegal curb located within their property line and that had been installed in violation of his property rights.  Subsequently, CLARKE's husband began to drive off of his property in order to pick up CLARKE's vehicle from the marina.

41.     At that time, PHELAN was parked outside of COHEN's home, which is also located in Island Estates.

42.     Upon seeing CLARKE'S husband drive onto his own property, PHELAN sped toward the CLARKE's home and unsuccessfully attempted to block them with his vehicle.  At no time did PHELAN observe CLARKE inside the Cayenne while it was driving over any illegal curb despite this fabrication to the APD.

43.     Thereafter, PHELAN chased the CLARKE's husband's vehicle down the street toward the marina in order to create a confrontation.

44.     After entering her own vehicle, which had been parked at the marina for the entire day, CLARKE contacted the Aventura Police Department as she feared for her safety.

45.     Within several minutes, Defendant Officers SCOTT and CRAIG arrived on the scene.  Upon arrival, they immediately walked up to PHELAN who falsely advised them that CLARKE had destroyed the Developer Defendant's property.

46.     Subsequently, CLARKE attempted to approach the Defendant Officers in order to show them a survey of her home on her phone, which clearly reflected that the curb was constructed on her property without authorization and was thus, illegal.

47.     The Defendant Officers refused to review this incontrovertible evidence despite CLARKE's calm, yet direct attempts to provide salient information about the situation.

48.     During her interaction, Officer Craig made specific references to his disdain for "rich people" in the neighborhood and simply refused to discuss her side of the story.

49.     While calmly providing this information to the Defendant Officers, Defendant SCOTT suddenly and without warning, cause, or provocation, stomped forcefully on CLARKE's foot, and thereafter both Officers forcefully twisted CLARKE's arms behind her back and violently lifted her off the ground while digging their knees into her calves.  While pulling CLARKE upward, SCOTT's boot was still lodged forcefully on CLARKE's flip-flop clad foot. The Defendant Officers proceeded to forcefully drag CLARKE down the block while berating her before throwing her into the back of the squad car.  Notwithstanding the false statements contained within the police report, at no time did CLARKE resist the Officers' actions.

50.     CLARKE was then placed under arrest for criminal mischief, disorderly conduct, and two counts of resisting arrest without violence despite the lack of probable cause for any of those crimes.  Notably, CLARKE is listed on the incident report as a female with an approximate height of 5' 3" and weighing 110 pounds.  In sharp contrast, each Defendant Officer weighs close to 200 pounds.  The force used by the Defendant Officers was excessive and in violation of CLARKE's rights and was constitutionally unreasonable and violated the Fourth and Fourteenth Amendment of the United States Constitution.  The time between the officer's arrival on scene and the arrest was approximately nine minutes.

51.     CLARKE was then forced to wait in the squad car for well over one hour while the Defendant Officers casually conversed with PHELAN, which was also captured on surveillance video.  During that time, PHELAN and the Defendant Officers concocted the false

story that CLARKE drove her BMW over a neighbor's curb, which was the purported cause of her arrest.  PHELAN continued to provide false information regarding the alleged cost of repairs to the sidewalk in order to cause the charges to be increased to a felony.  The felony charge was then added to the other counts.

52.     CLARKE was then transferred to a second squad car where she learned that her husband had also been arrested upon his return to the scene.  Notwithstanding, the Defendant Officers refused to allow CLARKE to use a telephone or otherwise make arrangements for the care of her children who were home.  In addition, when she asked the officer why she was arrested, he responded that CLARKE "should stop pretending to be a lawyer."

53.     Prior to transferring CLARKE to Miami-Dade County Jail, the Defendant Officers learned that CLARKE was a former prosecutor when they ran her name through the system and she was therefore considered a law enforcement officer by statute.  Typically, in a situation where the law enforcement officer is taken into custody, they are placed in a protective unit separate and apart from the general population.

54.     Despite learning of this information, upon arrival at Miami-Dade County Jail, CLARKE was placed in the general population.  During that time, she feared for her safety, underwent three separate strip searches, and experienced extreme emotional anguish.

55.     It was only after several hours that CLARKE was placed in a single holding cell located in an area of the jail that subjected CLARKE to unending screaming for the remainder of her time in custody.  Furthermore, the holding cell was filthy, covered in fecal matter, and for hours, CLARKE was refused even a sip of water despite repeated requests.

56.     In the early morning hours of February 27, 2015, CLARKE posted bond and was released from jail.

57.     Subsequent to the arrest, the City of Aventura ratified the Defendant Officers use of excessive force.  This is demonstrated through the lack of any competent investigation into the situation and APD's orchestration of a scheme to protect their officers by tampering with witnesses and evidence.

58.     For instance, and as stated above, CLARKE's vehicle was parked at the marina located within Island Estates at all times material to the incident.  However, the Defendant Officers noted in their arrest report that her vehicle had concrete on its tires consistent with it being driven over the newly constructed sidewalk.  However, since this car was *never* in the area of the new illegally placed curbs, this evidence must have been created after the fact.  In fact, upon David Clarke's arrival at the scene, a responding officer (who was working on site earlier in the day for the Developer Defendants under private detail) was in possession of the car keys and the car had been moved from the location it had been parked upon CLARKE's exit.

59.     The only reasonable inference is that this evidence was manufactured in order to create the appearance of criminal conduct.

60.     Finally, the Developer Defendants, with the acquiescence of the APD, tampered with the scene by placing a new curb at the property the next morning thereby preventing CLARKE from obtaining evidence to disprove the allegations leading to her arrest.

61.     Even before CLARKE arrived home, she was bombarded with phone calls from several media outlets inquiring about the arrest and the allegations made against her.  Clearly, the Developer Defendants initiated a media campaign intended to smear her reputation and otherwise discredit her in order to gain leverage in the pending lawsuit.  In addition to the continued media coverage, the Developer Defendants maintained a blog called "Aventura Bytes"

that was used to defame CLARKE. Defendant LEVENSOHN, in particular, began making statements to the press designed to impugn CLARKE's credibility.

62.     Further, COHEN expressly requested that the security company hired by the residents of the Island Estates conduct surveillance of CLARKE and alert COHEN each time she entered the development.

63.     As a result of the arrest, CLARKE was forced to retain counsel to fight the bogus charges.

64.     PHELAN, COHEN, their employee Rigaud Seraphin, and several officers were all interviewed by the State Attorney's Office and provided sworn statements containing their false accusations and damage estimates.  For example, on March 13, 2015, COHEN told the ASA the damage was estimated at $3,000. PHELAN told the ASA on March 18, 2015 the damage caused by CLARKE was $21,480.80. PHELAN emailed falsified estimates to the same ASA.

65.     On April 8, 2015, the State Attorney declined to prosecute CLARKE on all charges with the ASA acknowledging that the arrest only occurred as a result of the CLARKE's attempt to provide information to the Defendant Officers.

66.     Still, even with the charges dismissed, PHELAN celebrated his effort to have CLARKE arrested and upon seeing her in Key Largo, Florida, commented to several acquaintances that CLARKE "was the b----- he had arrested," which was overheard by CLARKE.

## COUNT I
### 42 U.S.C. § 1983
### Excessive Force
### (Against Scott and Craig)

Plaintiff realleges and reavers paragraphs 1 through 66 of the allegations as if fully set forth herein.

67.     On February 26, 2015, Defendant Officers Scott and Craig, acting under color of state law in the course and scope of their duties with the APD, seized and detained CLARKE.

68.     In the course of CLARKE's detention, Defendant Officers Scott and Craig, acting under color of state law and in the course and scope of their duties with the APD, employed patently unreasonable and excessive force under the circumstances.

69.     Specifically, in the course of their detention of CLARKE, whom at all times acted reasonably, followed commands, and was simply attempting to provide the Defendant Officers with salient information pertaining to their investigation, Defendant SGT SCOTT suddenly and without warning, cause, or provocation, forcefully stomped on CLARKE's foot, and thereafter both Officers forcefully twisted her arms behind her back and violently lifted her off the ground while digging their knees into Clarke's calves and while still stomping on her foot.  The Defendant Officers proceeded to forcefully throw CLARKE into the back of the squad car placing her under arrest for criminal mischief, disorderly conduct, and two counts of resisting arrest without violence despite the lack of probable cause for any of those crimes.  CLARKE was subsequently required to undergo medical treatment and was diagnosed with an impingement injury of her left shoulder as a direct result of this misconduct.

70.     Notably, CLARKE is listed on the incident report as a female with the approximate height of 5' 3" and weighing 110 pounds.  In sharp contrast, each Defendant Officer weighs close to 200 pounds.  The force used by the Defendant Officers was excessive,

constitutionally unreasonable and violated the Fourth and Fourteenth Amendment of the United States Constitution.

71.     During her detention, CLARKE did not take any action that objectively or subjectively could have been perceived as posing any threat to the safety of Defendant Officers.

72.     The arrest and subsequent injuries to CLARKE at the hands of Defendant Officers CRAIG and SCOTT was in violation of then clearly-established constitutional law interpreting the Fourth, Eighth and Fourteenth Amendment to the United States Constitution guaranteeing protection from unreasonable seizures, the right to be free from cruel and unusual punishment and the right to due process.

73.     As a direct and proximate result of the constitutional violations described herein and committed by Defendant Officers CRAIG and SCOTT, CLARKE suffered physical injuries to her feet, arms, hands, and shoulders, extreme emotional anguish, and monetary damages related to the defense of her criminal prosecution.

74.     In using such excessive and unreasonable force against CLARKE, Defendant Officers CRAIG and SCOTT acted in a manner that was reckless and callously indifferent to CLARKE's rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

75.     Pursuant to 42 U.S.C. § 1988, CLARKE seeks attorney's fees in bringing and prosecuting this action.

WHEREFORE, Plaintiff DARA CLARKE, demands judgment against Defendant Officers CRAIG and SCOTT in their individual capacities, for compensatory damages, past and future medical care, punitive damages, costs, and reasonable attorney's fees pursuant to 42 U.S.C. § 1998 and any other relief this Court deems just and proper.

<u>**COUNT II**</u>
**42 U.S.C. § 1983**
**Unofficial Policy, Practice, Procedure of Custom of Excessive Force**
**(Against City of Aventura)**

Plaintiff realleges and reavers paragraphs 1 through 66 of the allegations as if fully set forth herein.

76.     Defendant CITY OF AVENTURA had an unofficial policy, practice, procedure and/or custom of allowing its officers to use excessive force despite there being no imminent threat of harm.

77.     This policy, practice, procedure, and/or custom of allowing its officers to use excessive force is demonstrated by at least twenty (20) known incidents of excessive force carried out by the APD in the last five years in addition to the nine (9) prior incidents pertaining to Officers Craig and Scott over the course of their careers.  These incidents constitute known and repeated violations of the constitutional rights of individuals who come in contact with APD police officers.

78.     The aforementioned policies, practices, procedures and/or customs were consciously chosen and officially sanctioned by the CITY OF AVENTURA's policymakers. Alternatively, the aforementioned policies, practices, procedures, and/or customs were so widespread and longstanding that the CITY OF AVENTURA's policymakers must have known and therefore, were considered unofficial custom, usage, and practice with the force of law. Nonetheless, no action was taken to stop it.

79.     Defendant CITY OF AVENTURA permitted this unofficial policy and practice to continue by failing to properly discipline officers who were subjected to complaints for excessive force, including the Defendant Officers.

80.     Defendant CITY OF AVENTURA also permitted this unofficial policy and practice to continue by engaging in efforts to protect their officers by tampering with evidence. For instance, as admitted by PHELAN in subsequent deposition testimony, CLARKE's vehicle was parked at the marina located within Island Estates at all times material to the incident. However, the Defendant Officers noted in their arrest report that her vehicle had concrete on all of its tires consistent with it being driven over her neighbor's newly constructed illegal curb. Crime scene photographs purported to show this as well. Since the car was never in the area of the new illegal curb, this evidence must have been created after the fact.  In fact, upon David Clarke's arrival at the scene, a responding officer (who was on site earlier in the day as a paid employee of the Developer Defendants) was in possession of the car keys.  The only reasonable inference is that this evidence was manufactured in order to create the appearance of criminal conduct or to establish probable cause for an arrest.

81.      This unofficial policy, practice, procedure and/or custom caused a violation of CLARKE's Constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

82.     This unofficial policy of excessive force amounts to a department-wide exhibition of deliberate indifference to the Constitutional rights of individuals.  By instituting this grossly unconstitutional unofficial policy, practice, procedure and/or custom, Defendant CITY OF AVENTURA exhibited a willful, wanton and callous disregard for the constitutional rights of CLARKE.

83.     The moving force behind CLARKE's injuries was The CITY OF AVENTURA'S deliberate indifference to her Constitutional Rights.

84.     As a direct and proximate result of the actions of the CITY OF AVENTURA, as described herein, Defendant Officers CRAIG and SCOTT were permitted to continue a pattern and custom of using excessive force in violation of the constitutional rights of CLARKE.

85.     As a direct and proximate result of the constitutional violations described herein and committed by Defendant Officers CRAIG and SCOTT, CLARKE suffered physical injuries to her feet, arms, hands, and shoulders, extreme emotional anguish, and monetary damages related to the defense of her criminal prosecution.

86.     Pursuant to 42 U.S.C. § 1988, CLARKE seeks attorney's fees in bringing and prosecuting this action.

WHEREFORE, Plaintiff DARA CLARKE, demands judgment against Defendant CITY OF AVENTURA, for compensatory damages, past and future medical care, punitive damages, costs, and reasonable attorney's fees pursuant to 42 U.S.C. § 1998 and any other relief this Court deems just and proper.

**COUNT III**
**42 U.S.C. § 1983**
**Failure to Discipline/Ratification**
**(Against City of Aventura)**

Plaintiff re-alleges and incorporates paragraphs 1 through 62 of the allegations as if fully set forth herein.

87.     Despite knowledge of at least twenty (20) incidents involving the use of excessive force carried out by APD officers in the last five years in addition to the nine (9) prior incidents pertaining to Officers Craig and Scott over the course of their careers, and the conducting of alleged investigations into these incidents, APD demonstrated a persistent failure to take disciplinary action against the officers who used excessive force, including the Defendant

Officers.  In addition, APD orchestrated a scheme to protect their officers by tampering with evidence in this case.

88.     Because the Defendant Officers were not disciplined for their prior actions, additional instances involving the use of excessive force have been permitted.

89.     Through the CITY OF AVENTURA's policymakers' persistent failure to take disciplinary action against the officers or the APD, the CITY OF AVENTURA ratified their conduct.  Here, the CITY OF AVENTURA'S failure to correct the constitutionally offensive actions of its police department displays deliberate indifference toward the misconduct of its officers.

90.     As a direct and proximate result of the constitutional violations described herein, CLARKE suffered physical injuries to her feet, arms, hands, and shoulders, extreme emotional anguish, and monetary damages related to the defense of her criminal prosecution.

91.     Pursuant to 42 U.S.C. § 1988, CLARKE seeks attorney's fees in bringing and prosecuting this action.

WHEREFORE, Plaintiff DARA CLARKE, demands judgment against Defendant CITY OF AVENTURA, for compensatory damages, past and future medical care, punitive damages, costs, and reasonable attorney's fees pursuant to 42 U.S.C. § 1998 and any other relief this Court deems just and proper.

**COUNT IV**
**Malicious Prosecution**
**(Against Developer Defendants)**

Plaintiff re-alleges and incorporates paragraphs 1 through 66 of the allegations as if fully set forth herein.

92.     As alleged in detail above, the Developer Defendants embarked on a campaign designed to bully and harass anyone who appeared to frustrate their ability to complete construction of Prive.

93.     As it relates to CLARKE, PHELAN, acting individually and on behalf of the Developer Defendants, falsely accused CLARKE of felony criminal mischief despite knowing (i) that CLARKE was not driving the vehicle that ran over any illegal curb; (ii) that CLARKE was not in the vehicle that drove over the illegal curb located on the property she owned; and (iii) that the illegal curb would only cost a few hundred dollars to replace.

94.     PHELAN manufactured a story with the APD that CLARKE drove the BMW over her neighbor's illegal curb and invented the damages to ensure that CLARKE was charged with a felony.

95.     As a result of the Developer Defendants' actions, a criminal matter was commenced against CLARKE.

96.     The criminal matter was instigated with malice by the Developer Defendants based upon their view that CLARKE was frustrating their ability to complete construction of Prive.   Apparently, the Developer Defendants believed that a criminal prosecution would cause CLARKE to discontinue her resistance to the illegal construction of the sidewalk on her property.

97.     The Developer Defendants lacked probable cause to initiate the criminal investigation that led to CLARKE's arrest.   Indeed, there is no dispute that the Developer Defendants constructed a sidewalk on CLARKE's own fee simple property without her authorization and that CLARKE did not drive over any of the illegal curbs.

98.     The criminal matter ended in favor of CLARKE when the State Attorney refused to pursue any charges against her.

99.     As a result of this misconduct, CLARKE suffered physical injuries to her feet, arms, hands, and shoulders, extreme emotional anguish, and monetary damages related to the defense of her criminal prosecution.

WHEREFORE, Plaintiff DARA CLARKE, demands judgment against The Developer Defendants for compensatory damages, past and future medical care, punitive damages, costs, and any other relief this Court deems just and proper.

## COUNT V
### Negligent Reporting to Police
### (Against Developer Defendants)

Plaintiff re-alleges and incorporates paragraphs 1 through 66 of the allegations as if fully set forth herein.

100.     As alleged in detail above, the Developer Defendants embarked on a campaign designed to bully and harass anyone who appeared to frustrate their ability to complete construction of Prive.

101.     As it relates to CLARKE, PHELAN, acting individually and on behalf of the Developer Defendants, falsely accused CLARKE of felony criminal mischief despite knowing (i) that CLARKE was not driving the vehicle that ran over any illegal curb; (ii) that CLARKE was

not in the vehicle that drove over the illegal curb located on the property she owned; and (iii) that the illegal curb would only cost a few hundred dollars to replace.

102.     PHELAN, acting individually and on behalf of the Developer Defendants, then manufactured a story with the APD that CLARKE drove the BMW over her neighbor's illegal curb and invented the damages to ensure that CLARKE was charged with a felony.   Indeed, PHELAN later admitted under oath that CLARKE was not driving the vehicle.

103.     When providing this false information to the police, PHELAN, acting individually and on behalf of the Developer Defendants, knew or should have known that it would cause harm to CLARKE.

104.     The above actions by PHELAN were intentional, malicious, and created in order to harm CLARKE in response to her resistance to the illegal construction of the sidewalk on her property and reflect a willful and wanton disregard for CLARKE'S rights.

105.     Ultimately, the criminal matter ended in favor of CLARKE when the State Attorney dismissed all charges against her.

106.     As a result of this misconduct, CLARKE suffered physical injuries to her feet, arms, hands, and shoulders, extreme emotional anguish, and monetary damages related to the defense of her criminal prosecution.

WHEREFORE, Plaintiff DARA CLARKE, demands judgment against The Developer Defendants for compensatory damages, past and future medical care, punitive damages, costs, and any other relief this Court deems just and proper.

**COUNT VI**
**Defamation**
**(Against Developer Defendants)**

Plaintiff re-alleges and incorporates paragraphs 1 through 66 of the allegations as if fully set forth herein.

107.    As alleged in detail above, upon her release from jail, CLARKE was immediately bombarded with phone calls from several media outlets inquiring about the arrest and the allegations made against her.

108.    Clearly, the Developer Defendants collectively initiated a media campaign overnight by publishing false statements to the Miami Herald and the South Florida Business Journal through their public relations company, Boardroom PR, with the intent of smearing CLARKE's reputation by falsely and maliciously claiming she committed a crime in order to discredit her to gain leverage in a pending lawsuit. These statements were disseminated despite the Developer Defendants' first-hand knowledge that Clarke was not responsible for the destruction of any property, whether on her property or otherwise.

109.    In addition to above statements, the Developer Defendants created a blog called "Aventura Bytes," which was used to defame CLARKE to the public at large by falsely and maliciously claiming she was guilty of felony conduct and that Clarke "did not go quietly into the night."

110.    Finally, the Developer Defendants made statements to the Miami Herald and The Real Deal falsely and maliciously describing CLARKE as a "spoiled brat" and claiming that the steps taken to protect her property rights were a "college prank," all of which were designed to impugn CLARKE's credibility and damage her reputation.   These comments were made in

articles where the facts underlying CLARKE's resistance to the construction on her property were not accurately presented.

111.    As a result of this misconduct, CLARKE suffered damages, including emotional distress and damage to her reputation.

WHEREFORE, Plaintiff DARA CLARKE, demands judgment against The Developer Defendants for compensatory damages, past and future medical care, punitive damages, costs, and any other relief this Court deems just and proper.

## COUNT VII
### Defamation
### (Against Lebensohn)

Plaintiff re-alleges and incorporates paragraphs 1 through 66 of the allegations as if fully set forth herein.

112.    LEBENSOHN, acting individually and on behalf of the Developer Defendants, made statements to the Miami Herald and The Real Deal falsely and maliciously describing CLARKE as a "spoiled brat" and claiming that the steps taken to protect her property rights were a "college prank," all of which were designed to impugn CLARKE's credibility and damage her reputation.   These comments were made in articles where the facts underlying CLARKE's resistance to the construction on her property were not accurately presented.

113.    As a result of this misconduct, CLARKE suffered damages, including emotional distress and damage to her reputation.

WHEREFORE, Plaintiff DARA CLARKE, demands judgment against LEBENSOHN for compensatory damages, past and future medical care, punitive damages, costs, and any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.


Respectfully submitted,

**HALL, LAMB, HALL & LETO, P.A.**
Offices at Grand Bay Plaza
Penthouse One
2665 South Bayshore Drive
Miami, Florida 33131
Telephone: (305) 374-5030
Facsimile: (305) 374-5033


By: /s/ Matthew P. Leto
      MATTHEW P. LETO
      Florida Bar No.:  014504
      ANDREW C. HALL
      Florida Bar No.: 111480

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via ECF

on all counsel of record this 9th day of January, 2017:

Michael Burke, Esq.
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman
2455 East Sunrise Blvd.
Suite 1000
Fort Lauderdale, Florida 33304

Glen H. Waldman, Esq.
Eleanor Barnett, Esq.
Heller Waldman, P.L.
3250 Mary Street Suite 102
Coconut Grove, Florida 33133

Matthew Mandel
Weiss Serota Helfman Cole & Bierman
200 East Broward Blvd.
Suite 1900
Fort Lauderdale, FL 33301

　/s Matthew P. Leto
MATTHEW P. LETO



CFN 2014R0544987
OR Bk 29256 Pgs 2966 - 2983; (18pgs)
RECORDED 08/04/2014 14:31:03
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Record and Return to:
Jacqueline Garcia
Florida Registered Paralegal
Rennert Vogel Mandler & Rodriguez, PA
100 SE 2 Street, Ste 2900
Miami, Florida 33131

*DEF EX. D*
*Filed 9-17 A.D. 2014*
*Case No. 14-21513CA09*
*Circuit Court*

## MIAMI-DADE COUNTY COVER SHEETS

DOCUMENT TITLE: COVENANT OF INDEMNIFICATION

LEGAL DESCRIPTION:

**Parcel 1 ("Easement Parcel – South Island"):**

Dedicated 10-foot Platted Utility Easement as shown in the Plat of Island Estates, recorded in Plat Book 155 at Page 3, of the Public Records of Miami-Dade County, Florida, and referenced in the "Owner's Plat Restrictions" on the Plat.

**Parcel 2 ("North Island"):**

Tracts "B" and "C" of TWO ISLANDS IN DUMFOUNDLING BAY, according to the Plat thereof, as recorded in Plat Book 141, Page 66, of the Public Records of Miami-Dade County, Florida;

TOGETHER WITH THE FOLLOWING DESCRIBED LANDS:

All lands lying above the mean high water line abutting the following described parcel in Sections 2 and 11, Township 52 South, Range 42 East, Miami-Dade County, Florida: Beginning at an iron pipe set in the center line of Collins Avenue on the North line of Gulf Stream Park, a subdivision recorded in Plat Book 35, at Page 51, of the Public Records of Dade County, Florida. Thence due West along the North line of said Gulf Stream Park Subdivision and the prolongation West thereof for a distance of 3,350.00 feet to the point of beginning of the tract of land herein described and also the beginning of a tangential circular curve; thence Southerly, Westerly and Northerly along said curve, having a radius of 175 feet, through a central angle of 180° 0' 0" for an arc distance of 549.78 feet to the end of said curve; thence North 15° 0' 0" East for a distance of 950 feet to the beginning of a tangential circular curve; thence Northerly, Easterly and Southerly along said curve having a radius of 175 feet, through a central angle of 180° 0' 0" for an arc distance of 549.78 feet to the end of said curve; thence South 15° 0' 0" West for a distance of 950 feet to the point of beginning.

LESS AND EXCEPT the following submerged lands conveyed in Quit Claim D
the Board of Trustees of the Internal Improvement Trust Fund of the State of Flo

EXHIBIT
A

Cover Sheet 1 of 2

recorded in Official Records Book 24846, Page 2154, of the Public Records of Miami-Dade County, Florida, being more particularly described as follows:

All lands lying below the mean high water line located within the following described parcel in Sections 2 and 11, Township 52 South, Range 42 East, Miami-Dade County, Florida:

Commence at an iron pipe set in the centerline of Collins Avenue on the North line of the Gulf Stream Park, a subdivision, recorded in Plat Book 35, at Page 51, of the Public Records of Miami-Dade County, Florida; thence due West along the North line of said Gulf Stream Park Subdivision and the prolongation West thereof for a distance of 3,350.00 feet to the point of beginning of the tract of land herein described and, also the beginning of a tangential circular curve; thence Southerly, Westerly and Northerly along said curve, having a radius of 175.00 feet, through a central angle of 180 degrees 00 minutes 00 seconds for an arc distance of 549.78 feet to the end of said curve; thence North 15 degrees 00 minutes 00 seconds East for a distance of 950.00 feet to the beginning of a tangential circular curve; thence Northerly, Easterly, and Southerly along said curve having a radius of 175.00 feet and a central angle of 180 degrees 00 minutes 00 seconds for an arc distance of 549.78 feet to the end of said curve; thence South 15 degrees 00 minutes 00 seconds West for a distance of 950.00 feet to the point of beginning.

LESS AND EXCEPT the following described lands:

Those lands bordered on the west by the easterly terminus of Easement No. 26140 (3030-13) between the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida and Murray Blattman as Trustee under the provisions of a certain Trust Agreement dated December 18, 1975 and known as Trust No. 75-LT-21 recorded in Plat Book 12314, Page 2066, of the Public Records of Miami-Dade County, Florida; on the north by the easterly extension of the north line of Easement No. 26140 (3030-13) between the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida and Murray Blattman as Trustee under the provisions of a certain Trust Agreement dated December 18, 1975 and known as Trust No. 75-LT-21 recorded in Plat Book 12314, Page 2066, of the Public Records of Miami-Dade County, Florida, for a distance of 79.80 feet; on the east along a line running southeasterly until it intersects the easterly prolongation of the south line of said easement at a distance of 105.82 feet from the southeasterly corner of the easterly terminus of said easement, thence south along the easterly prolongation of the south line of Easement No. 26140 (3030-13) between the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida and Murray Blattman as Trustee under the provisions of a certain Trust Agreement dated December 18, 1975 and known as Trust No. 75-LT-21 recorded in Plat Book 12314, Page 2066, of the Public Records of Miami-Dade County, Florida, for a distance of 105.82 feet to the southeasterly corner of the easterly terminus of Easement No. 26140 (3030-13), said lands being located in Sections 2 and 11, Township 52 South, Range 42 East, Miami-Dade County, Florida.

ALL OF SAID LANDS SITUATE, LYING AND BEING IN MIAMI-DADE COUNTY, FLORIDA.

## Covenant of Indemnification

This Covenant of Indemnification (the "Covenant") is made and executed the _16th_ day of July, 2014, by Last Lot Corp., a Florida corporation, NI Holdings, LLC, a Florida limited liability company, and Two Islands Development Corp., a Florida corporation (jointly and severally referred to as the "Applicant") to and for the benefit of the City of Aventura, Florida, a Florida Municipal Corporation (the "City").

WITNESSETH:   In connection with (i) the City's consideration of the issuance of an approval to Applicant on Applicant's Sidewalk Permit Application #14-561 (the "Application") for the installation of a sidewalk (the "Sidewalk") upon the dedicated ten (10) foot utility easement area of the South Island, as described in the Application set forth in Exhibit "A", a copy of which is attached hereto and incorporated herein, and which is supported by Opinions of Title and Supplemental Opinions of Title furnished to the City on behalf of Applicant and approved by the City Attorney, and (ii) the City's consideration of the issuance of further approvals and building permits for the proposed multi-family development on the North Island, Applicant hereby covenants and agrees as follows:

1.      The City accepts and agrees to the terms of this Covenant in furtherance of compliance with the condition for a covenant under City Resolution No. 98-77.

2.      Except as otherwise expressly provided herein, Applicant agrees to defend, indemnify and hold the City harmless from any claim, demand, suit, loss, cost, expense or damage which may be asserted, claimed, or recovered against or from City (and its officers, agents, servants and employees) solely by reason of any property damage or bodily injury, including death, sustained by any person whomsoever, which said claim, demand, suit, loss, cost, expense or damage for property damage or bodily injury arises out of or is related to the construction or maintenance of the Sidewalk or construction of the proposed multi-family development of the North Island, and regardless of whether such claim, demand, suit, loss, damage, cost or expense is caused in whole or in part by City's negligence or by the negligence of the City's officers, agents, servants and employees, except that such covenant to defend, indemnify and hold harmless excludes and does not apply to  or otherwise cover any claim, demand, suit, loss, cost, expense or damage to the extent that the City (and/or the City's officers, agents, servants or employees) engage in willful misconduct and/or are grossly negligent.

Except as otherwise expressly provided herein, Applicant's covenant to defend, indemnify and hold harmless City, shall likewise apply to any reasonable attorneys' fees and taxable costs (or other reasonably necessary costs) incurred by the City in defending any claim, suit, action or other proceeding brought by any person or entity (other than Applicant or Applicant's successors and/or assigns) against the City concerning any decision by the City to issue City approvals and building permits for the Sidewalk and/or for the proposed multi-family development of the North Island.

This agreement to defend, indemnify or hold the City harmless excludes and does not apply to or otherwise cover any claim, demand, suit, loss, cost, expense or damage brought or asserted by Applicant or Applicant's successors and/or assigns against the City, or its officers, agents, servants or employees concerning any breach of this Covenant by City.

Prior to requesting to be defended, indemnified or held harmless under this Covenant, the City shall provide Applicant with written notice, and Applicant shall have ten (10) days in which to respond in writing to the City's request.  Any indemnity obligation under this Covenant is subject to the City's obligation to provide Applicant with timely written notice (*i.e.*, within seven (7) days of the City being served with a complaint (or petition) and, if no complaint (or petition) has been served, within twenty (20) days of City's knowledge of an applicable claim) to allow for the proper defense of any claim, demand, suit, loss, cost, expense or damage that may be covered under this Covenant.

The defense of City, as required herein, shall be provided by legal counsel which is approved by the City Manager  (and, to the extent applicable when such defense representation is provided by the City Attorney, at the City's currently charged rate), with such approval not to be unreasonably withheld by City.

The City may not settle or offer to settle (unless it elects to do so in its own discretion and at its sole cost) any alleged claim, demand, suit, loss, cost, expense or damage that it maintains is covered under the indemnity obligations under this Covenant without first obtaining Applicant's prior written consent, which consent shall not be  unreasonably withheld.  Failure to obtain Applicant's prior written consent shall result in the indemnity obligations under this Covenant being terminated and having no further legal or binding effect as to any such settle amount and the City, not Applicant, shall be liable for payment of a such

2

settlement amount that City agrees to.  This shall not impair any prior liability or responsibility of Applicant.

     3.     Upon the issuance and release by the City of a building permit for the Sidewalk and the Sidewalk being constructed or is commenced to be constructed, Applicant (or its successors and/or assigns) shall at such time, at Applicant's ( or Applicant's successors or assigns) sole cost and expense, provide and continuously maintain (for at least ten (10) years after construction (or commencement of construction, whichever is the longer period of time) of the Sidewalk comprehensive general liability insurance coverage which shall further support Applicant's covenant to defend, indemnify and hold harmless City for property damage or bodily injury as provided herein.  The form and sufficiency of said liability insurance policy, provided such policy is commercially reasonable and available, shall be subject to approval of the City Attorney and City Manager and shall provide  primary coverage in the amount of $1,000,000 (or greater in the discretion of Applicant) combined single limit for personal injury and property damage liability, shall support and cover Applicant's covenant to defend, indemnify and hold harmless for any such personal injury and property damage, and shall name the City (and, if commercially reasonable and available, City's officers, agents and employees) as an additional insured.  A certificate of insurance reflecting compliance with this Section shall be continuously maintained on file with the City Clerk by Applicant.

     4.     As further security for Applicant's performance of its covenant to defend, indemnify and hold City harmless, Applicant hereby agrees to deposit, within 10 days after execution of this Covenant (and expressly conditioned upon the issuance and release by the City of a building permit for the Sidewalk), the sum of $50,000 in an account to be held in escrow pursuant to an  escrow arrangement (the "Escrow Account") which is approved by the City Manager, and in which the City Attorney, Weiss Serota Helfman, et. al., acts as escrow agent.  Thereafter, no later than 60 days after execution of the Covenant (and expressly conditioned upon the issuance and release by the City of a building permit for the Sidewalk), Applicant shall deposit an additional $200,000 in the Escrow Account.  The funds in the Escrow Account shall be held in escrow as security to cover all of the Applicant's indemnity obligations under this Covenant.  The Applicant shall either promptly reimburse the City for any reasonable attorneys' fees and taxable costs (or other reasonably necessary costs) incurred by the City that are covered under all of  the indemnity obligations under this Covenant, or the City shall be authorized to obtain reimbursement of such fees and costs directly from the Escrow Account.   In the event the City obtains reimbursement of reasonable

attorneys' fees and taxable costs (or other reasonably necessary costs) from the Escrow Account, the Applicant agrees to replenish the Escrow Account so that at least $250,000 is maintained in the Escrow Account at all times. The Escrow Account shall be maintained for at least four (4) years after execution of this Covenant. After such four-year period (or at any earlier period of time that may be agreed to in writing by Applicant and the City), all remaining funds in the Escrow Account shall be released and refunded to Applicant. The Escrow Account and process required by this Section 4 shall also apply to and cover any damage liability of City in the event that the insurance coverage required in Section 3 fails or is not available or is insufficient to fully protect City.

5.     Nothing in this Covenant of Indemnification is intended to waive, limit or otherwise restrict any defenses or immunities available to the City as a result of its executive decision in connection with the issuance of any City approvals and building permits for the Sidewalk and/or for the proposed multi-family development of the North Island.

6.     The City and Applicant agree to fully cooperate with each other pursuant to this Covenant and they further recognize that time is of the essence in all aspects of this Covenant.

It is expressly recognized by the City and Applicant that the issuance of any building permit for the Sidewalk (and/or any challenge to the issuance of such building permit or any other challenge in connection with the Sidewalk, brought or filed by any other person) shall not in any way delay, hinder, or otherwise affect the ongoing review and processing of approvals and building permits for the proposed multi-family development on the North Island (including, but not limited to, administrative site plan review approvals and other reviews, approvals and permits in connection with such development). Accordingly, the issuance of the building permit for the Sidewalk and/or the construction of the Sidewalk (and/or any challenge to the issuance of such building permit or any other challenge in connection with the Sidewalk, brought or filed by any other person) shall not in any way delay, hinder, or otherwise affect the City's review, processing and issuance of approvals and buildings permits for the proposed multi-family development on the North Island pursuant to the City's standard protocol, procedures and timing. However, notwithstanding any other provision of this Covenant, it is recognized that the City shall require as a condition subsequent to the final site plan approval for the multifamily development of the North Island, that the Applicant shall be required to install the Sidewalk at the South Island in accordance with the time limits authorized by the Final Site Plan approval.

4

the Sidewalk requirement is otherwise released or waived by the City Commission of the City or by court order. Likewise, notwithstanding any provision of this Covenant, it is recognized that the City currently maintains (as it is well within its rights to do so) that it shall not issue a building permit for the multifamily development of the North Island, unless the Sidewalk is first installed at the South Island (unless the Sidewalk requirement is otherwise released or waived by the City Commission of the City or by court order). City shall, to the extent practicable, expedite any hearing before the City Commission as it relates to any request for the Sidewalk requirement to be released or waived (or other relief sought by Applicant with respect to the Sidewalk requirement). Applicant (including its successors and assigns) fully reserves the right to petition the City (including the City Commission) to request that the Sidewalk requirement be released or waived, or to seek other relief from the City Commission with respect to the Sidewalk requirement pursuant to the City Code and applicable law.

Moreover, so long as not directly adverse to each of their respective interests, the City and Applicant agree to fully cooperate with one another to diligently defend any claim, suit, action or other proceeding covered under this Covenant, including, but not limited to, any claim, suit, action or other proceeding against the City in connection with the issuance of any City approvals and building permits for the Sidewalk and/or for the proposed multi-family development of the North Island, and any appeal in connection with any such claim, suit, action or other proceeding.

In connection with such cooperation, the City shall have the City attorney (*i.e.*, a partner or senior attorney from the law firm that serves as City attorney) attend dispositive hearings and, to the best extent possible, argue in full support of the defense of any claim, suit, action or other proceeding concerning any challenge to the issuance of any building permit for the Sidewalk or any other challenge in connection with the Sidewalk. In addition, the City shall cooperate with any and all efforts to seek to recover an award of attorneys' fees and costs against any person or entity bringing any claim, suit, action or other proceeding covered under this Covenant to the extent such claim, suit, action or other proceedings is without any basis or is otherwise frivolous.

7.     Nothing in this Covenant is intended to limit or restrict the executive powers of the City (provided such powers are exercised in accordance with the City Code and applicable law) in deciding whether to issue any approvals and building permits for the Sidewalk and/or for the proposed multi-family development of the North Island. The City retains sole discretion under its police

5

powers (provided such powers are exercised in accordance with the City Code and applicable law) as to whether to grant or deny approvals and building permits for the Sidewalk and/or for the proposed multi-family development on the North Island.

8.      While nothing in this Covenant of Indemnification shall prohibit the City from exercising its judgment to defend any claim, suit, action or other proceeding covered under this Covenant, any material breach by the City under this Covenant shall automatically suspend Applicant's further indemnity and related obligations under this Covenant, pending City's opportunity to cure said breach.

9.      Notwithstanding anything contained herein, Applicant (including its successors and assigns) fully reserves all of its rights and remedies, including, but not limited to, all vested development rights to proceed with the proposed multi-family development on the North Island. Accordingly, nothing in this Covenant is intended to waive, limit, or otherwise restrict such rights and remedies, including all vested development rights and claims that Applicant (including any of its successors and/or assigns) may have against any person or entity. Nonetheless, provided that the City issues and releases to Applicant the building permit for the Sidewalk, this Covenant is intended to release the City from any claims that Applicant (including any of its successors and/or assigns) may have against the City with respect to the Sidewalk, except for any claim concerning any future breach of this Covenant by City or any other future claim against the City. Further, upon the City's issuance and release of the building permit for the Sidewalk, Applicant recognizes that it presently has no cause of action against City with respect to the Sidewalk, and has to date been treated fairly by City.

10.      Applicant agrees that this Covenant shall be binding upon the parties hereto and their respective successors and assigns excluding condominium unit owners under the proposed multi-family development on the North Island (other than signatories herein) and such unit owners' mortgagees/lenders, and also excluding mortgagees/construction lenders for this proposed development on the North Island. Applicant may assign its obligations under this Covenant to any person or entity, including, but not limited, to a master association or other community association, subject to the prior written approval of the City Manager.



11.     Any notices required or permitted to be given under this Covenant shall be in writing and shall be deemed to have been given if delivered by hand, sent by recognized overnight courier (such as Federal Express), or mailed by certified or registered mail, return receipt requested, in a postage prepaid envelope and addressed as follows:

| | |
|---|---|
| If to the City at: | City of Aventura<br>Attention: City Manager<br>19200 West Country Club Drive<br>Aventura, Florida 33180<br>Telephone:  (305) 466-8910 |
| With a copy to: | David M. Wolpin, Esq., City Attorney<br>Weiss Serota Helfman Pastoriza Cole & Boniske, P.L.<br>2525 Ponce de Leon Blvd., Suite 700<br>Coral Gables, Florida  33134<br>Telephone: (305) 854-0800 |
| If to Applicant: | Last Lot Corp.<br>NI Holdings, LLC<br>Two Islands Development Corp.<br>c/o Gary Cohen, Authorized Representative<br>2750 N.E. 185th Street, Suite 301<br>Aventura, Florida 33180 |
| With a copy to: | John K. Shubin, Esq.<br>Shubin & Bass, P.A.<br>46 S.W. 1st Street, 3rd Floor<br>Miami, Florida 33130<br>Telephone: (305) 381-6060 |

Notices personally delivered or sent by overnight courier shall be deemed given on the business date of delivery and notices mailed in accordance with the foregoing shall be deemed given three (3) days after deposit in the U.S. Mail.

12.     Enforcement shall be by action against any parties or person violating, or attempting to violate, any covenants herein.  The prevailing party in any action or suit pertaining to or arising out of this instrument shall be entitled to recover, in addition to costs and disbursements allowed by law, such sum as the Court may adjudge to be reasonable for the services of its attorney at trial and appellate

7

proceedings. This enforcement provision shall be in addition to any other remedies available at law, in equity or both. The parties voluntarily waive any right to trial by jury concerning any litigation between Applicant and the City, which arises under this Covenant.

13.    Invalidation of any one of these covenants, by judgment of Court, shall not affect any of the other provisions which shall remain in full force and effect.

14.    This instrument shall be filed of record in the public records of Miami-Dade County, Florida at the cost of Applicant.

15.    Except as otherwise provided above with respect to the Comprehensive General Liability Policy and the Escrow Account, this Covenant shall be effective for a term which commences upon execution hereof and continues for a term of ten (10) years.

16.    This Covenant shall be construed and governed in accordance with the laws of the State of Florida.

17.    This Covenant shall be of no force or effect if City determines not to timely process or grant approvals and building permits for the Sidewalk.

**In witness whereof, Applicant has executed this Covenant under seal on the day and year herein first above written, and City has accepted this Covenant.**

**[SIGNATURE PAGES TO FOLLOW]**



8

**APPLICANT:**

**LAST LOT CORP.**

BY: _____     Print Name: _____
         President

Signed, sealed and delivered in the presence of:

_____          _____
Witness                            STANLEY B. PRICE
                                   Print Name

_____          _____
Witness                            Charles Phelan
                                   Print Name

Attest:

_____          _____
Corporate Secretary                Gary Cohen
                                   Print Name

**ACKNOWLEDGMENT**

STATE OF FLORIDA            )
                           ) ss
COUNTY OF MIAMI-DADE       )

The foregoing instrument was acknowledged before me this _____ day of July, 2014, by _____, as Authorized Signatory and President of _____. He/she is personally known to me or presented his/her _____ as identification.

_____
Notary Public
NOTARY SEAL/STAMP



DONNA L. MUSSATTO
Notary Public - State of Florida
My Comm. Expires Nov 11, 2016
Commission # EE 217185
Bonded Through National Notary Assn.



9

**APPLICANT:**

**NI HOLDINGS, LLC**

BY: _____     Print Name: _____
      Manager

Signed, sealed and delivered in the presence of:

_____          STANLEY B. PRICE
Witness                            Print Name

_____          Charles Phelan
Witness                            Print Name


## ACKNOWLEDGMENT

STATE OF FLORIDA          )
                          ) ss
COUNTY OF MIAMI-DADE      )

The foregoing instrument was acknowledged before me this _____ day of July, 2014, by _____, as Authorized Signatory and Manager of _____. He/she is personally known to me or presented his/her _____ as identification.

_____
Notary Public
NOTARY SEAL/STAMP



DONNA L. MUSSATTO
Notary Public - State of Florida
My Comm. Expires Nov 11, 2016
Commission # EE 217185
Bonded Through National Notary Assn.



**APPLICANT:**

**TWO ISLANDS DEVELOPMENT CORP.**

BY: _____     Print Name: _Cary Cohen, Pres._
        President

Signed, sealed and delivered in the presence of:

_____          STANLEY B. PRICE
Witness                            Print Name

_____          Charles Phelan
Witness                            Print Name

Attest:

_____          _Cary Cohen, Sec_
Corporate Secretary                Print Name

## ACKNOWLEDGMENT

STATE OF FLORIDA        )
                        ) ss
COUNTY OF MIAMI-DADE    )

The foregoing instrument was acknowledged before me this _10_ day of July, 2014, by _Cary Cohen_____, as Authorized Signatory and President of _Two Islands Development_____. He/she is personally known to me or presented his/her _____ as identification .

_Donna L. Mussatto_____
Notary Public
NOTARY SEAL/STAMP



DONNA L. MUSSATTO
Notary Public - State of Florida
My Comm. Expires Nov 11, 2016
Commission # EE 217185
Bonded Through National Notary Assn.

11



## JOINER BY OWNER OF NORTH ISLAND

Gary Cohen, Trustee for Trust 75-LT-21 (the "Trust"), as the current owner of the North Island, hereby joins in this Covenant of Indemnification to the same extent as any Applicant hereunder, and shall be entitled to the rights and benefits and bound to the obligations which are applicable to each Applicant under this Covenant of Indemnification.   Upon conveyance of the North Island, the successors and assigns of the Trust (excluding condominium unit owners under the proposed multi-family development on the North Island (other than signatories under this Covenant) and such unit owners' mortgagees/lenders, and also excluding mortgagees/construction lenders for this proposed development on the North Island) shall be entitled to the rights and benefits and bound to the obligations which are applicable to each Applicant under this Covenant of Indemnification, and the Trust shall be released of such obligations upon the assumption by operation of law or otherwise of such rights, benefits, and obligations by the successors and assigns of the Trust (excluding condominium unit owners under the proposed multi-family development on the North Island (other than signatories under this Covenant) and such unit owners' mortgagees/lenders, and also excluding mortgagees/construction lenders for this proposed development on the North Island).

**GARY COHEN, AS TRUSTEE FOR TRUST 75-LT-21**

BY: _____     Print Name: _____
        Gary Cohen, Trustee

Signed, sealed and delivered in the presence of:

_____     STANLEY B. PRICE
Witness                                          Print Name

_____     Charles Phelan
Witness                                          Print Name



12

## ACKNOWLEDGMENT

STATE OF FLORIDA )
                 ) ss
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me this _10_ day of July, 2014, by Gary Cohen, as Trustee for Trust 75-LT-21. He/she is personally known to me or presented his/her _____ as identification.



Notary Public
NOTARY SEAL/STAMP

DONNA L. MUSSATTO
Notary Public - State of Florida
My Comm. Expires Nov 11, 2016
Commission # EE 217185
Bonded Through National Notary Assn.



13

Accepted by the City of Aventura, Florida, this _15th_ day of July, 2014.

BY: _____
       Eric M. Soroka, City Manager

ATTEST:

_____
City Clerk

Approved as to form and legal sufficiency for reliance of the City only:

_____
City Attorney

ACKNOWLEDGMENT

STATE OF FLORIDA        )
                          ) ss
COUNTY OF MIAMI-DADE  )

      The foregoing instrument was acknowledged before me this _15_ day of July, 2014, by Eric M. Soroka, as City Manager, City of Aventura, a Florida Municipal Corporation. He is personally known to me or presented his _____ as identification.

_____
Notary Public
NOTARY SEAL/STAMP



14



# CITY OF AVENTURA
## PERMIT APPLICATION
19200 W Country Club Drive 4th Floor - Aventura, FL 33180
Tel (305) 466-8937 - Fax (305) 466-8949

*EXHIBIT "A"*

| | | | |
|---|---|---|---|
| Permit #: 12-14-5101 | Job Address: 3700 Island Estates Drive, Aventura | Unit #: | |

**Owner Information**
Name: Two Islands Development Corp
Address: 2750 NE 185th St Suite 301
City: Aventura   State: Fl   Zip: 33160
Phone: 305-935-9206

**Contractor Information**
Name: All County Paving
Address: 1302 So. J. St.
City: Lake Worth   State: Fl   Zip: 33460
Phone: 407-610-8069   License #: U-19887

**Permit Type: (Check Only One)**
- [ ] BUILDING
- [ ] ELECTRICAL
- [ ] MECHANICAL
- [ ] PLUMBING/GAS
- [ ] PAVING/DRAINAGE
- [ ] ROOFING
- [ ] CHANGE CONTRACTOR
- [ ] EXTENSION
- [ ] RENEWAL
- [ ] SHOP DRAWING
- [ ] SIGN
- [x] OTHER

**Type of Work (Check Only One)**
- [x] New Construction
- [ ] Addition Detached
- [ ] Alteration Exterior
- [ ] Repair/Replace
- [ ] Alteration Interior
- [ ] Addition Attached

**Estimated Job Cost**
$45,000.00

**Square Footage**
40,000 SF

**Architect / Engineer Information**
Name: Thomas Checca, PE
Address: 11568 NW 73rd Manor
City: Parkland   State: Fl   Zip: 33076
Phone: 954-344-6664   License:

**Legal Use of Work**
Current Use of Property: Single family home subdivision
Folio #: various on Tract A, Plat Book 141 pg 41
Work Classification:
Residential: ✓   Commercial:

**Authorization for Permit Pick Up**
Name: Gary Cohen
Name:

**Description of Work**
install 4 ft. paved sidewalk and curb within dedicated 10ft utility easement

Application is hereby made to obtain a permit to do work and installation as indicated. I certify that all work will be performed to meet the standards of all laws regulating construction in Aventura. I understand that a separate permit must be obtained for ELECTRICAL, MECHANICAL, PLUMBING, SIGNS, WELLS, POOLS, ROOFING, SHUTTERS, WINDOWS, FURNACES, BOILERS, HEATERS, TANKS, and AIR CONDITIONERS, etc. I understand that in signing this application I am responsible for the supervision and completion of the construction including obtaining all inspections in accordance with the plans and specifications.

NOTICE TO OWNER: This Permit does not grant any property rights or exclusive privileges. This Permit does not authorize any damage or injury to the property or rights of others. In addition to the requirements of this permit, there may be additional deed restrictions applicable to this property that may be found in the public records of this county, and there may be additional permits required from other governmental entities such as Water Management Districts, state agencies or federal agencies. The City recommends, although does not require, that the owner secure any required approvals from his/her/their Condominium or Homeowners' Association prior to submitting this building permit application. The owner acknowledges that issuance of a building permit by the City is based solely upon the Florida Building Code and applicable local, county, state and federal laws an does not independently satisfy any applicable Homeowner/Condominium Association approval requirements that may exist between the Owner and the Association; and that the City does not enforce any non-governmental deed restrictions or Homeowner/Condominium restrictions upon this property.

**WARNING TO OWNER:** *YOUR FAILURE TO RECORD A NOTICE OF COMMENCEMENT MAY RESULT IN YOU PAYING TWICE FOR IMPROVEMENTS TO YOUR PROPERTY. A NOTICE OF COMMENCEMENT MUST BE RECORDED & POSTED ON THE JOB SITE BEFORE YOUR FIRST INSPECTION. IF YOU INTEND TO OBTAIN FINANCING, CONSULT WITH YOUR ATTORNEY OR LENDER BEFORE RECORDING YOUR NOTICE OF COMMENCEMENT.*

**OWNER/CONTRACTOR AFFIDAVIT:** I certify that all the foregoing information is accurate and that all work will be done in compliance with all applicable laws regulating construction and zoning.

| Signature of Owner or Agent | Date 12/9/13 | Signature of Qualifier | Date |
|---|---|---|---|
| Print Name (Owner or Agent) Gary Cohen, President | | Print Name (Qualifier) | |

STATE OF FLORIDA, COUNTY OF _____
Sworn to and subscribed before me this _____ day
20___

NOTARY FOR OWNER OR AGENT
Personally Known _____ OR Produced Identification _____

*DANIEL GUTIERREZ*
*Notary Public - State of Florida*
*My Comm. Expires Aug 14, 2015*
*Commission # EE 121443*

STATE OF FLORIDA, COUNTY OF _____
Sworn to and subscribed before me this _____ day of _____
20___

NOTARY FOR QUALIFIER
Personally Known _____ OR Produced Identification _____

This permit does not become valid until signed by an authorized representative of the City of Aventura and all fees are paid and acknowledged in the space provided.

**For Office Use Only**

| DISCIPLINE | AP | DAP | DISCIPLINE | AP | DAP | FEES $ | | |
|---|---|---|---|---|---|---|---|---|
| Zoning | | | Electrical | | | | | |
| Building | | | Mechanical | | | Base Permit | | Impact Fees |
| Structural | | | Plumbing | | | State DCA | | Fines |
| P/Works | | | Roofing | | | State DBPR | | Double fee |
| Flood | | | Building Official | | | BCCO | | Other(s) |
| Landscaping | | | | | | Zoning | | Total |

OR BK 29256 PG 2983
LAST PAGE



# CERTIFICATE OF LIABILITY INSURANCE

PRIVE-1   OP ID: GL

DATE (MM/DD/YYYY)
07/15/14

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | 305-477-0444 | CONTACT NAME: ALEIDA LAZARO | | |
|---|---|---|---|---|
| Combined Underwriters of Miami<br>8240 N.W. 52 Terr, Suite 408<br>Miami, FL 33166<br>GEORGINA LOPEZ | 305-599-2343 | PHONE (A/C, No, Ext): 305-477-0444 | | FAX (A/C, No): 305-599-2343 |
| | | E-MAIL ADDRESS: aleida@combinedmiami.com | | |

| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|---|
| | | INSURER A : SENECA INSURANCE COMPANY | |
| INSURED | PRIVE' DEVELOPERS LLC,<br>PRIVE' DEVELOPERS MANAGER LLC<br>BH3 REALTY LLC<br>C/O MR. JARRETT FREEDMAN<br>2711 SOUTH OCEAN DRIVE, #2404<br>HOLLYWOOD BEACH, FL 33019 | INSURER B : | |
| | | INSURER C : | |
| | | INSURER D : | |
| | | INSURER E : | |
| | | INSURER F : | |

## COVERAGES     CERTIFICATE NUMBER:     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE X OCCUR | X | | BAG-1024413 | 08/28/13 | 08/28/14 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>POLICY PRO-JECT LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| | AUTOMOBILE LIABILITY<br>ANY AUTO<br>ALL OWNED AUTOS   SCHEDULED AUTOS<br>HIRED AUTOS   NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | UMBRELLA LIAB   OCCUR<br>EXCESS LIAB   CLAIMS-MADE | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | DED   RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY     Y / N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?   N / A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | WC STATU-TORY LIMITS   OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
THE FOLLOWING ARE LISTED AS ADDITIONAL INSUREDS W/RESPECTS TO CONSTRUCTION OF A 4FT WIDE SIDEWALK AT:"BLOCK 2 LOTS 3-16,PLAT BOOK 155 PAGE 0 OF AVENTURA, FL 33180": TWO ISLANDS DEVELOPMENT CORPORATION,A FL CORP,ANY HOLDINGS,A FL LTD LIABILITY CO, ISLAND ESTATES HOMEOWNERS ASSOCIATION,INC., LAST ISLAND DEVELOPMENT CORP., A FL CORP & THE CITY OF AVENTURA,IT'S OFFICERS, AGENTS AND EMPLOYEES

STATE OF FLORIDA, COUNTY OF DADE
I hereby certify this to be a true and correct copy of ........
................................ 6/2 AD 20 17
.......... Clerk of Circuit and County Courts
Deputy Clerk ...............

JENNIFER DARIUS #311227

| CERTIFICATE HOLDER | CITYOFA | CANCELLATION |
|---|---|---|
| CITY OF AVENTURA<br>BUILDING DEPARTMENT<br>19200 WEST COUNTRY CLUB DRIVE<br>AVENTURA, FL 33180 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>Georgina A. Lopez |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2010/05)     The ACORD name and logo are registered marks of ACORD

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE
COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 14-21513 CA 09

DAVID L. CLARKE and DARA H.
CLARKE; DAN E. KLEINMAN and
SHEILA KLEINMAN; and ALAN REYF,

      Plaintiffs,

v.

TWO ISLANDS DEVELOPMENT CORP.;
NI HOLDINGS, LLC; AND LAST LOT CORP.,

      Defendants.

_____/

## ORDER ON PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY INJUNCTION

THIS CAUSE came to be heard by this Court on Wednesday, September 17, 2014 at 10:30 a.m. upon Plaintiffs' Emergency Motion for Temporary Injunction (the "Motion") filed by Plaintiffs, David L. Clarke, Dara H. Clarke, Dan E. Kleinman, Sheila Kleinman and Alan Reyf.

The Court has reviewed the Verified Complaint for Declaratory and Injunctive Relief, Plaintiffs' Motion and Memorandum in Support of Motion and Defendants' Response in Opposition to Plaintiffs' Motion; has heard evidentiary testimony provided by Thomas Brownell, Licensed Land Surveyor, Alan Reyf, Sheila Kleinman, Dara H. Clarke; and has heard and reviewed the evidence presented, the arguments of counsel, and the controlling law of the State of Florida, and being otherwise fully advised in the premises, the Court makes the following findings of fact:

```
EXHIBIT
   B
```

1.     Plaintiffs are homeowners in a subdivision called "Island Estates" (also known as the South Island) located in the City of Aventura. Plaintiffs bring this action for trespass to challenge the construction, without their consent, of a four-foot paver sidewalk within a dedicated 10-foot utility easement area along the outer boundaries of plaintiffs' three lots.

2.     Defendant Two Islands developed South Island with 22 residential lots and built 21 single-family residences on 21 of the 22 lots, as well as a marina. Defendant Last Lot owns the last vacant lot on South Island which it received by conveyance from Two Islands, along with an assignment of rights under the "Declaration of Covenants and Restrictions for Island Estates in Aventura, Florida" (the "Declaration") (publicly recorded on August 6, 1999 at OR Book 18728, Page 3182) to Last Lot and Defendant NI Holdings.

3.     Defendants assert that the "Declaration", the South Island Plat and the issuance of a building permit for this sidewalk by the City of Aventura (the "City") authorize the building of this paver sidewalk on or within the public utility easement that crosses Plaintiffs' lots. Specifically, Defendants state that the "Declaration" expressly provides that "the real property hereinafter described is and shall be held, transferred, sold, conveyed and occupied subject to the covenants, conditions, restrictions, easements, charges and liens hereinafter set forth …." (Decl., at 7). Additionally, Defendants have established that one of the conditions for a proposed multi-family development on the island next door (known as the North Island) is the construction of the sidewalk on both sides of the street within South Island. (City of Aventura Resolution No. 98-77)

4.     Pursuant to the Building Permit, Two Islands (the Developer) has constructed the paver sidewalk on twelve of fifteen lots. The sidewalk in the easement area on these twelve lots is substantially complete. While some work has commenced on the Plaintiffs' three lots on

August 19, 2014, at approximately 9:30 a.m., further work on these three lots ceased in compliance with a *status quo* order entered by the Court on August 22, 2014.

5.      Plaintiffs seek to prohibit Defendants from re-entering their development in which the Developer conveyed the last lot over six years ago and now dig up their yards and landscaping without their consent, creating a sidewalk – in violation of plat restriction – on land owned by Plaintiffs. Plaintiffs further assert that Defendants have no legal right to construct a sidewalk upon an area which is owned by Plaintiffs without their consent and said action constitutes a trespass as a matter of law, subject to injunctive relief.

The Court makes the following conclusions of law:

1.      To be entitled to a temporary injunction, Plaintiffs must establish: (a) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (b) a substantial likelihood of success on the merits; (c) that the threatened injury to the petitioner outweighs any possible harm to the respondent; and (d) that the granting of the temporary injunction will not disserve the public interest.  *See Cordis Corp. v. Prooslin,* 482 So. 2d 486, 489 (Fla. 3d DCA 1986); *Graham v. Edwards,* 472 So. 2d 803, 806 (Fla. 3d DCA 1985).

2.      It is likely that the Plaintiffs will suffer irreparable harm if Defendants are permitted to trespass upon Plaintiffs' property to construct the proposed sidewalk. Plaintiffs have established that a sidewalk is not a public utility; and therefore, it is not an authorized use of a utility easement. §177.031(7)(a)(b) and §177.09(16), Fla. Stat. Further, the "Declaration" and plat do not permit the building of a sidewalk in the utility easement because it fails to describe a sidewalk as a utility. Additionally, Plaintiffs face the exposure to claims of liability in personal injury cases involving persons walking across Plaintiffs' land on the unwanted sidewalk. The proposed sidewalk will also deprive Plaintiffs of their inalienable property rights to use all

portions of their property as they see fit, and it will take away Plaintiffs' right to peace and tranquility in their property by allowing strangers to cross their property on a sidewalk and/or for the Developer to use the land for its own purposes. The proposed taking and alteration of the use of Plaintiffs' land constitutes further irreparable injury.

3.      The Plaintiffs do not have an "adequate remedy at law" as the exposure to claims of liability in personal injury cases involving persons walking across Plaintiffs' land on the unwanted sidewalk is not susceptible of money calculation and is therefore speculative. This risk is apparently real as underscored by the City's requirement and receipt of indemnification from the Developer for any potential liability resulting from the construction and use of the proposed sidewalk.

While the Court recognizes that there is an administrative procedure whereby Plaintiffs may ask the City of Aventura to waive the construction of the paver sidewalk as described and mandated in Resolution 98-77, the Court does not find that to be practical and an adequate remedy. First, the developer has constructed the paver sidewalk on twelve lots, apparently with the consent of the owners of those lots, of fifteen lots. Hence, the likelihood that the twelve lot owners will join the Plaintiffs for application of a waiver is speculative, at best, and unlikely. Second, the likelihood of the City granting a waiver is also speculative and will impose a financial cost, delay and loss of Plaintiffs' right to enjoyment and possession of their property.

4.      The Plaintiffs are entitled to enjoin a trespass on their land in the instant case where Defendants have wrongly asserted that because a sidewalk is not excluded as a permissible use of the utility easement, they have a right to build on Plaintiffs' land. Accordingly, the Plaintiffs are likely to prevail in this action.

5.     The granting of a temporary injunction serves the public interest by preventing trespassers from entering and engaging in unwanted construction on Plaintiffs' property. Public policy favors protecting Plaintiffs in their homes and properties.

Accordingly, this Court ORDERS AND ADJUDGES as follows:

The motion is hereby GRANTED.

6.     A temporary injunction is hereby granted in favor of Plaintiffs, David L. Clarke, Dara H. Clarke, Dan E. Kleinman, Sheila Kleinman and Alan Reyf, for the purpose of temporarily prohibiting Defendants, TWO ISLANDS DEVELOPMENT CORP., NI HOLDINGS, LLC AND LAST LOT CORP., from constructing, without Plaintiffs' consent, a four-foot paver sidewalk within a dedicated 10-foot utility easement area along the outer boundaries of Plaintiffs' lots.

Each Plaintiff shall post a bond in the amount of $20,000.00, and said bond amount shall be posted within seventy-two (72) hours from the date and time of this order.

DONE AND ORDERED in Miami-Dade County, Florida, this 22nd day of September 2014, at _____ p.m..

**Conformed Copy**

SEP 2 2 2014

_____
THE HONORABLE JERALD BAGLEY
CIRCUIT COURT JUDGE

COPIES:

Susan E. Raffanell, Esq., Coffey Burlington, P.L., Counsel for Plaintiffs, 2699 South Bayshore Drive, Penthouse, Miami, Florida 33132; sraffanello@coffeyburlington.com

John K. Shubin, Esq., Shubin & Bass, Counsel for Defendants, 46 S.W. First Street, Third Floor, Miami, Florida 33130; jshubin@shubinbass.com

5.     The granting of a temporary injunction serves the public interest by preventing trespassers from entering and engaging in unwanted construction on Plaintiffs' property. Public policy favors protecting Plaintiffs in their homes and properties.

Accordingly, this Court ORDERS AND ADJUDGES as follows:

The motion is hereby GRANTED.

6.     A temporary injunction is hereby granted in favor of Plaintiffs, David L. Clarke, Dara H. Clarke, Dan E. Kleinman, Sheila Kleinman and Alan Reyf, for the purpose of temporarily prohibiting Defendants, TWO ISLANDS DEVELOPMENT CORP., NI HOLDINGS, LLC AND LAST LOT CORP., from constructing, without Plaintiffs' consent, a four-foot paver sidewalk within a dedicated 10-foot utility easement area along the outer boundaries of Plaintiffs' lots.

Each Plaintiff shall post a bond in the amount of $20,000.00, and said bond amount shall be posted within seventy-two (72) hours from the date and time of this order.

DONE AND ORDERED in Miami-Dade County, Florida, this 22nd day of September 2014, at 5:13 p.m..

THE HONORABLE JERALD BAGLEY
CIRCUIT COURT JUDGE

JUDGE JERALD BAGLEY

COPIES:

Susan E. Raffanell, Esq., Coffey Burlington, P.L., Counsel for Plaintiffs, 2699 South Bayshore Drive, Penthouse, Miami, Florida 33132; sraffanello@coffeyburlington.com

John K. Shubin, Esq., Shubin & Bass, Counsel for Defendants, 46 S.W. First Street, Third Floor, Miami, Florida 33130; jshubin@shubinbass.com

# Third District Court of Appeal

### State of Florida

Opinion filed February 25, 2015.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D14-2324
Lower Tribunal No. 14-21513

————————

## Two Islands Development Corporation, NI Holdings, LLC, and Last Lot Corporation,

Appellants,

vs.

## David L. Clarke, Dara H. Clarke, Dan E. Kleiman, Sheila Kleiman and Alan Reyf,

Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jerald Bagley, Judge.

Richman Greer, P.A., and Gerald F. Richman; Shubin & Bass, P.A., and John K. Shubin, Juan J. Farach, Deana D. Falce, and Katherine R. Maxwell, for appellants.

Coffey Burlington, P.L., and Robert K. Burlington and Susan E. Raffanello, for appellees.

Before SUAREZ, LAGOA, and LOGUE, JJ.

LAGOA, J.

---

**EXHIBIT**

**C**

Appellants, Two Islands Development Corporation ("Two Islands"), NI Holdings, LLC ("NI"), and Last Lot Corporation ("Last Lot"), (collectively, "Appellants"), appeal from an order granting Appellees David L. Clarke, Dara H. Clarke, Dan E. Kleiman, Sheila Kleiman, and Alan Reyf's (collectively "Appellees") Emergency Motion for Temporary Injunction prohibiting Appellants from constructing a paver sidewalk along the outer boundaries of Appellees' residential property lots. For the reasons set forth below, we vacate the trial court's September 22, 2014 order and remand for further proceedings.

## I.   FACTUAL & PROCEDURAL HISTORY

In July 1991, two islands off the coast of Aventura, Florida, were platted as "Two Islands in Dumfoundling Bay" (the "Original Plat"). The southernmost island (the "South Island") was re-platted as "Island Estates" (the "Re-Plat"). The City of Aventura (the "City") granted administrative site plan approval for the residential development of the "Island Estates" subdivision. As part of this approval, the City granted a non-use variance ("Resolution No. 98-77" or the "Resolution") waiving the requirement that a sidewalk be constructed on both the north and south side of Island Estates Drive, and only requiring a sidewalk to be constructed on the north side of the street. The Resolution also required that a covenant be recorded mandating the construction of a sidewalk on the south side of the street "if the second (north) island should be developed with residential units

2

other than single-family homes."  Appellant Two Islands developed the South Island into the "Island Estates" subdivision, including twenty-one single-family residences and a marina.  Two Islands ultimately assigned developer's rights to Appellants NI and Last Lot in order for all three entities—Two Islands, NI, and Last Lot—to have "developer" rights under the governing Declaration of Covenants and Restrictions for Island Estates (the "Declaration").

Appellees own residential property in the "Island Estates" subdivision on the South Island.  The Re-Plat of the South Island depicts a ten-foot utility easement running across the outer boundary of each lot along both the north and south side of Island Estates Drive, including the individual lots owned by Appellees.  The Re-Plat's restrictions reserve this ten-foot area "for installation and maintenance of public utilities."

The City subsequently approved a luxury condominium project for the development of 160 units in two, fifteen-story towers on the northernmost island (the "North Island") called "Privé at Island Estates."  Non-party Trust No. 75-LT-21 (the "Trust"), through its Trustee Gary Cohen, is the owner of the North Island, and non-party Privé Developers, LLC ("Privé Developers") is the developer of the Privé at Island Estates project on the North Island.

Pursuant to the requirements of Resolution No. 98-77, Appellants filed a permit application with the City in December 2013, seeking to construct a sidewalk

on the south side of Island Estates Drive within the ten-foot utility easement area on each of the residential lots. The sidewalk in the easement area was substantially completed on twelve of the fifteen total lots.

On August 19, 2014, Appellees, the property owners of the three remaining lots, filed an Emergency Motion for Temporary Injunction to challenge the imminent construction of the four-foot paver sidewalk along the outer boundaries of Appellees' three property lots. At the evidentiary hearing on September 22, 2014, counsel for Appellants made an *ore tenus* motion for the Trust and Privé Developers, given their interest in the North Island, to intervene in the underlying proceedings. Counsel asserted that Appellants had presented testimony regarding "the direct and immediate and substantial impact" on the interests of both the Trust and Privé Developers, and that they were necessary, indispensable parties. The trial court denied counsel's motion, stating that it would prejudice Appellees to allow the Trust and Privé Developers to intervene at that time.

On September 22, 2014, the trial court entered a temporary injunction enjoining Appellants from proceeding with the installation of the sidewalk within the ten-foot easement area running along the outer boundary of Appellees' three lots. The trial court's order required each Appellee to post a bond in the amount of $20,000.

II.   <u>ANALYSIS</u>

Appellants argue that the Trust, the owner of the North Island, and Privé Developers, the developer of the North Island, are indispensable parties to the instant action, and that the trial court abused its discretion in denying Appellants' *ore tenus* motion for the owner and developer to intervene.  We agree.

Appellees contend that their action did not seek relief against the Trust or Privé Developers; rather, it was an action to protect Appellees' private, residential lots against a trespass by Appellants, and to preclude Appellants from carrying out any construction activity on land owned by Appellees.  While Appellees accurately characterize the relief sought in the Verified Complaint for Declaratory and Injunctive Relief, we find Appellees' argument unpersuasive.  The trial court's temporary injunction effectively results in delaying construction of the North Island project, as the City's approval of the Privé Development expressly conditioned the issuance of a building permit on the completion of the second sidewalk on the South Island.  However, the southern portion of the sidewalk on the South Island cannot be completed while the temporary injunction is in effect, thus frustrating the issuance of the building permit for the Privé Development on the North Island.  The trial court did not order Appellees to pursue an application for a waiver of the condition imposed in Resolution No. 98-77; it simply prohibited Appellants from constructing a four-foot paver sidewalk, without giving those

whose rights are being interfered with—the owner and developer of the North Island—an opportunity to be heard.

"A court is without jurisdiction to issue an injunction which would interfere with the rights of those who are not parties to the action.  An injunction can lie only when its scope is limited in effect to the rights of parties before the court." Sheoah Highlands, Inc. v. Daugherty, 837 So. 2d 579, 583 (Fla. 5th DCA 2003) (citing Street v. Sugerman, 177 So. 2d 526, 527 (Fla. 3d DCA 1965), and Fontainebleau Hotel Corp. v. City of Miami Beach, 172 So. 2d 255, 256 (Fla. 3d DCA 1965)); see also Generation Invs., LLC v. Al-Jumaa, Inc., 53 So. 3d 372, 375 (Fla. 5th DCA 2011). Stated otherwise, "'[t]he general rule in equity is that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, must be made parties either as complainants or defendants so that a *complete decree* may be made binding upon all parties.'" Sheoah, 837 So. 2d at 583 (quoting Oakland Props. Corp. v. Hogan, 117 So. 846, 848 (Fla. 1928)); see also Stevens v. Tarpon Bay Moorings Homeowners Ass'n Inc., 15 So. 3d 753, 754 (Fla. 4th DCA 2009).  A party is "materially interested" or "indispensable" when it is "impossible to completely adjudicate the matter without affecting either that party's interest or the interests of another party in the action."  Fla. Dep't of Revenue v. Cummings, 930 So. 2d 604, 607 (Fla. 2006) (citing Hertz Corp. v. Piccolo, 453 So. 2d 12, 14 n. 3 (Fla. 1984) (describing indispensable parties as

ones so essential to a suit that no final decision can be rendered without their joinder), and Bastida v. Batchelor, 418 So. 2d 297, 299 (Fla. 3d DCA 1982) ("An indispensable party [is] one without whom the rights of others cannot be determined.")); see also Stevens, 15 So. 3d at 754.

We conclude that the temporary injunction directly interferes with the rights of parties who were not before the trial court, and who were specifically not permitted to intervene.  The relief awarded by the trial court delays the Trust's and Privé Developers's receipt of a building permit for the development of North Island.  Significantly, nearly sixty of the Privé Development's condominiums are already under contract for sale, many of which are contingent upon the issuance of the building permit, and the closing of a $145 million loan for the Privé Development cannot proceed in the absence of the building permit.

Although the injunctive relief awarded in the trial court's final judgment is directed only at Appellants, prohibiting the construction of the paver sidewalk on Appellees' property affects and interferes with the rights of the Trust and Privé Developers, given their interest in the North Island.  Accordingly, the impact of the temporary injunction on the Trust and Privé Developers makes them an indispensable party to the action.  See Generation Invs., 53 So. 3d at 375; see also Stevens, 15 So. 3d at 754-55; Leighton v. First Universal Lending, LLC, 925 So. 2d 462,464-65 (Fla. 4th DCA 2006).  Because the trial court's ruling affects the

rights of persons not before the court, we vacate the temporary injunction and hold that it was error for the trial court to deny Appellant's *ore tenus* motion for the Trust and Privé Developers to intervene in the underlying proceedings.

On remand, if Appellees are again successful in obtaining a temporary injunction, the trial court must "promptly set the bond in an appropriate amount after providing the parties to the litigation and the interested nonparties with an opportunity to be heard" on the issue of foreseeable damages to not only Appellants, but also to the Trust and Privé Developers.  <u>Forrest v. Citi Residential Lending, Inc.</u>, 73 So. 3d 269, 280 (Fla. 2d DCA 2011); <u>see also</u> Fla. R. Civ. P. 1.610(b) ("No temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined.").

III.   <u>CONCLUSION</u>

Accordingly, for the reasons stated, we conclude that the trial court erred in issuing the temporary injunction without joining indispensable parties, and we reverse the September 22, 2014 order entered below and remand for further proceedings consistent with this opinion.  We express no opinion on the merits of the remaining issues raised on appeal by appellants.

REVERSED AND REMANDED.

8