United States District Court
for the
Southern District of Florida

| Dara Clarke, Plaintiff, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 16-25217-Civ-Scola |
| | ) | |
| Charles Phelan, and others, | ) | |
| Defendants. | ) | |

## Omnibus Order on Motions to Dismiss

This matter is before the Court upon two motions to dismiss filed by the Defendants City of Aventura, Terry Scott, and Joseph Craig (collectively, "the City Defendants") (ECF No. 18), and by the Defendants Charles Phelan, Gary Cohen, Privé Developers, LLC, Two Islands Development Corp., BH3 Realty, LLC, NI Holdings, LLC, Last Lot Corp., Nomur Holdings, LLC, and Daniel Lebensohn (collectively, "the Developer Defendants")[1] (ECF No. 19). After careful consideration of the motions, all opposing and supporting submissions, and the applicable case law, the Court **denies** the motions (**ECF Nos. 18 and 19**).

1. **Background**

At its core, this case arises from a disagreement about where the sidewalk ends. However, unlike the Shel Silverstein poem, there is no grass growing soft and white, sun burning crimson bright, or peppermint wind. Shel Silverstein, Where the Sidewalk Ends: the Poems & Drawings of Shel Silverstein (Harper and Row, ed., 1st ed. 1974).

The Plaintiff, Dara Clarke, owns a home in the Island Estates development on the southern of two adjacent islands located in Dumfounding Bay within the City of Aventura (the "City"). (Am. Compl. ¶¶ 7, 9, 24-25.) In March of 2013, the Developer Defendants began a condominium development named Privé at Island Estates, located on the northern island. (*Id.* ¶ 22.) As a condition of the development, the City required that the Developer Defendants construct certain sidewalks pursuant to conditions placed by the City through a variance when the southern island was developed. (*Id.* ¶ 23.) As a result, the

---

[1] The Developer Defendants object to being designated as such, and refer to themselves as the "Non-City Defendants." However, the Plaintiff Dara Clarke refers to them as the Developer Defendants in the Amended Complaint (ECF No. 14); thus, for the sake of clarity, the Court will utilize the Plaintiff's nomenclature.

Defendant Two Islands Development Corp. applied for a permit to construct a sidewalk in part on property owned by Clarke. (*Id.* ¶¶ 24-25.)

When the permit was issued under a utility easement, Clarke, and other impacted property owners from the Island Estates development, initiated a lawsuit in Florida state court, in which they challenged the legality of the sidewalks, and sought to prevent their construction (the "State Lawsuit"). (*Id.* ¶¶ 26, 30.) The state court judge entered an order granting the injunction, which prevented the Developer Defendants from constructing the sidewalk on what the judge determined was the Plaintiff's property. (*Id.* ¶¶ 31-32; ECF No. 14, Exh. B.) However, the Third District Court of Appeal reversed the order granting the property owners' motion for temporary injunction and remanded for a new injunction hearing, based upon a procedural error during the original evidentiary hearing. (*Id.* ¶ 33; ECF No. 14, Exh. C.) The Developer Defendants began construction on the sidewalks within one day of the reversal by the Third District Court of Appeal, before the mandate issued and another temporary injunction hearing could be held. (*Id.* ¶ 34.)

In order to oversee the construction, the Developer Defendants hired several officers from the Aventura Police Department. (*Id.* ¶ 35.) In response and in protest to the construction, Clarke sat on her neighbor's property line in order to prevent the construction crews from building the sidewalk on her property; however, she eventually left the location. (*Id.* ¶¶ 36-37.) Upon her return to the house with her husband in his car (Clarke's vehicle was parked at the marina within the development), they found that a curb had been constructed within their property line. (*Id.* ¶¶ 39-40.) Mr. Clarke drove his car onto the swale in front of his home, which damaged the newly-constructed curb. (*Id.* ¶ 40.) Shortly after, Mr. Clarke began to drive off to take Clarke to retrieve her vehicle from the marina. (*Id.* ¶ 40.) Defendant Phelan was parked at Defendant Cohen's home, from where he could observe the Clarkes, and upon seeing the car attempt to drive off, he tried—unsuccessfully—to block them in their vehicle. (*Id.* ¶ 42.) Instead, Phelan chased Mr. Clarke's vehicle to the marina. (*Id.* ¶ 43.)

Clarke called the Aventura Police Department once she arrived at her car at the marina because she feared for her safety. (*Id.* ¶44.) When Defendant Officers Scott and Craig ((the "Defendant Officers") responded to the scene, Phelan advised them that Clarke had destroyed the Developer Defendants' construction. (*Id.* ¶ 45.) When Clarke attempted to explain the situation regarding her property calmly to the officers, Scott suddenly stomped on her foot, and then both officers twisted her arms behind her back and lifted her off the ground, with Scott's boot still on her foot, and while digging their knees into her calves. (*Id.* ¶ 49.) Scott and Craig then dragged Clarke down the block,

berating her, before they threw her into the back of a squad car. (*Id.*) Clarke did not resist the officers at any time, despite statements to the contrary in the subsequent police report. (*Id.*)

Nonetheless, Clarke was arrested for resisting arrest, criminal mischief, and disorderly conduct. (*Id.* ¶ 50.) Clarke waited in the squad car for over an hour, during which time Phelan, and the Defendant Officers fabricated the story that she drove her own vehicle over her neighbor's curb, causing an inflated amount of damages that would increase her potential charge to a felony. (*Id.* ¶ 51). Clarke was then transferred to Miami-Dade county jail and housed first with the general population, and then placed into a squalid single holding cell, until she posted bond and was released. (*Id.* ¶¶ 54-56.)

Following her release, the City conducted no investigation into the situation with Clarke or the Defendant Officers, and the Developer Defendants placed a new curb at the property. (*Id.* ¶¶57-58.) In addition, Clarke began to receive telephone calls from the media regarding her arrest, and the Developer Defendants maintained a blog used to defame Clarke. (*Id.* ¶ 61.) Clarke alleges that Defendant Lebensohn specifically made statements to the press designed to impugn her credibility. (*Id.*) Ultimately, the state attorney declined to prosecute Clarke on all charges. (*Id.* ¶ 65.)

In the Amended Complaint, Clarke asserts claims pursuant to 42 U.S.C. section 1983 against the Defendant Officers for excessive force (Count I); against the City for endorsing an unofficial policy practice, procedure or custom of excessive force (Count II), and for failure to discipline or ratification (Count III); and claims for malicious prosecution (Count IV), negligent reporting to the police (Count V), and defamation (Count VI), against the Developer Defendants; and, defamation (Count VII) against Defendant Lebensohn. The Defendants have all moved to dismiss the claims against them for failure to state a claim.

 2. **Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must therefore articulate "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (internal quotations and citation omitted). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. Through this lens, the Court analyzes the instant motions in turn.

### 3. Analysis

#### A. The City Defendants' Motion (ECF No. 18)

In their motion, the City Defendants argue that the Amended Complaint fails to state a claim for violation of the Fourth Amendment for excessive force because the force used was *de minimis*. In addition, Defendant Officers claim that they are entitled to qualified immunity. Moreover, the City argues that there is no sufficient basis to impose municipal liability upon it.

##### *(1) Count I – excessive use of force against Scott and Craig*

In Count I, Clarke asserts a claim for violation of 42 U.S.C. section 1983 against Scott and Craig for use of excessive force. The Defendant Officers argue that the Court should find that the force used was *de minimis*. However, none of the cases relied upon by the Defendant Officers is particularly instructive to this Court's inquiry, as they involve the review of claims upon summary judgment, not at the dismissal stage.

Excessive force claims are properly analyzed under the Fourth Amendment's objective reasonableness standard. *Scott v. Harris*, 550 U.S. 372,

381 (2007). "That standard asks whether the force applied is objectively reasonable in light of the facts confronting the officer, a determination we make from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight." *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (internal quotations omitted). In determining whether the force used was reasonable, the Supreme Court considers a number of factors, including "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Williams v. Bauer,* 503 F. App'x 858, 861 (11th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Eleventh Circuit also instructs that "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). In addition, the Court considers "the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted." *Mobley*, 783 F.3d at 1353 (internal citation and alteration omitted).

The Court concludes that Clarke sufficiently states a claim against the Defendant Officers for the use of excessive force. As alleged in the Amended Complaint, after the Defendant Officers responded to the scene at the marina, they were presented with a 5-foot 3-inch female weighing approximately 110 pounds, who was calm and attempting to provide relevant information regarding the circumstances of the sequence of events already relayed to them by Phelan. The Defendant Officers, in turn, are alleged to each weigh approximately 200 pounds. (Am. Compl. ¶ 50.) During their interaction with Clarke, Scott, without warning, stomped on Clarke's foot, and then with Craig proceeded to twist her arms behind her back and drag her to the squad car. As a result of the interaction with the Defendant Officers, Clarke sustained a shoulder injury, and additional injuries to her feet, arms, and hands. Upon the facts alleged, Clarke posed no threat to the Defendant Officers, nor was she attempting to flee or otherwise disobeying instructions. Moreover, the Defendant Officers, relying on information provided to them by Defendant Phelan, knew only that the crime that Clarke committed was driving over a curb constructed on her property—not a severe or violent crime. As such, the Court will not dismiss Clarke's claim. *See Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011) (stating "that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment.").

The Defendant Officers next argue that they are entitled to qualified immunity. Qualified immunity protects government officers from suit in cases where they have not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (internal quotations and citations committed). The parties in this case do not appear to dispute that Scott and Craig were acting within their discretionary authority during their interaction with Clarke. Therefore, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id*. This showing involves a two-part inquiry: the Court first looks to whether the Defendant Officers violated a constitutional right, and then whether that right was clearly established at the time of the incident. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). The Court has already determined that Clarke sufficiently states a claim for excessive force in violation of the Fourth Amendment; therefore, the relevant inquiry is whether the law involving her claim is clearly established.

"A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009) (internal citations omitted). Clarke provides citations to a number of cases, which she contends support the finding that the Defendant Officers are not entitled to qualified immunity upon the facts alleged. The Court agrees, notwithstanding the Defendant Officers' attempts to distinguish only one of those cases, because the case law stands for the proposition that force that is unprovoked against a non-hostile and non-violent person who is not disobeying instructions violates that person's Fourth Amendment Rights. *Fils*, 647 F.3d at 1289; *see also, e.g. Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (holding that an officer's punching a non-resisting suspect in the stomach was excessive); *Lee*, 284 F.3d at 1199 (denying qualified immunity for officer who slammed secured suspects head into car).

Thus, Scott and Craig's conduct violated Clarke's clearly established Fourth Amendment rights, because she was calm during their brief exchange, and they gave her no warning before stomping on her foot, manhandling her,

and then dragging her to the squad car. Therefore, the Defendant Officers are not entitled to qualified immunity at this juncture.

### (2) Counts II and III – Excessive Force and Failure to Discipline/Ratification against the City

The City argues that Clarke fails to adequately allege a basis for municipal liability for either excessive force or upon a ratification theory, because she does not allege any details regarding past complaints of excessive force against Scott and Craig, and other City police officers.

A municipality cannot be held liable for the actions of its agents under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978). However, a municipality may be sued for violating Section 1983 if the alleged constitutional violation is caused by a municipality's custom or policy. *Id.* Municipal liability under Section 1983 can exist where a persistent and widespread discriminatory practice is not a formal written policy, or even where the custom is contrary to written policy. *Id.* at 691. "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Ft. Laud.*, 923 F.2d 1474, 1481 (11th Cir. 1991); *see also Farred v. Hicks*, 915 F.2d 1530, 1532-33 (11th Cir. 1990) ("Governmental entities may be held liable under section 1983 when a governmental 'policy or custom' is the 'moving force' behind the constitutional deprivation.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell*, 436 U.S. at 694.

A policy or custom "is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *German v. Broward Cty. Sheriff's Office*, 315 F. App'x 773, 776 (11th Cir. 2009) (citing *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)). For example, even where a municipality provides rules and regulations for the operation of its police department, if those rules are repeatedly violated and the municipality has knowledge of the conduct but fails to rectify the situation then it may be liable. *Depew*, 787 F.2d at 1499 ("The continued failure of the [municipality] to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983.").

The Court finds that Clarke's allegations are sufficient to state a claim for municipal liability against the City. Assuming the truth of the Plaintiff's allegations as the Court must in this stage of proceedings, in pertinent part, Clarke alleges that the City failed to act upon at least twenty (20) complaints of excessive force, including two against Scott and seven against Craig over the

course of their careers. (Am. Compl. ¶¶ 18-19, 57-58.) Clarke further alleges that the City has failed to prevent repeated known constitutional violations despite conducting investigations into such incidents and allowed witness and evidence tampering in order to protect its officers, demonstrating a pattern of deliberate indifference with respect to officer misconduct. (*Id.* ¶¶ 57-58, 87-89.) At the pleading stage nothing more is required. *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) ("If established, [the allegation that the City . . . has a custom of allowing the use of excessive force,] provides the requisite fault on the part of the City, as a persistent failure to take disciplinary action against officers can give rise to the inference that municipality has ratified conduct, thereby establishing a 'custom' within the meaning of *Monell*.") (internal citation omitted).

While additional facts are always helpful, the City cites no case law in support of its contention that Clarke must allege additional specific factual details at this stage in proceedings with respect to the merits of the past complaints, and such claims are not subject to a heightened pleading standard. *See Rivas v. Figueroa*, 2012 WL 1378161, at *4 (S.D. Fla. Apr. 20, 2012) (Scola, J.) (denying motion to dismiss where the plaintiffs alleged five instances of past unconstitutional practices, and that the defendant city was on notice but failed to take remedial action). Whether Clarke can ultimately prove that such a policy or custom in fact exists is an issue for another day.

### B. The Developer Defendants' Motion (ECF No. 19)

In their motion, the Developer Defendants argue that Clarke's claims against them are barred by the litigation privilege.[2] The Developer Defendants further argue that the claims for negligent reporting to police (Count V), and defamation (Count VI) are subject to dismissal for the additional reason that they impermissibly lump together allegations against different defendants and conclusory allegations in violation of Rule 8 of the Federal Rules of Civil Procedure; that they are entitled to a qualified privilege with respect to Count V; and that the defamation claims (Counts VI and VII) lack the requisite specificity; and therefore, that Clarke fails to state a cause of action with respect to these claims. In the alternative, the Developer Defendants move for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

---

[2] Although the Developer Defendants initially asserted the litigation privilege with respect to Clarke's claim for malicious prosecution, in their reply (ECF No. 28), they withdraw their argument based upon the Florida Supreme Court's decision in *Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017).

### *(1) The litigation privilege*

At the outset, the Court notes that even though the Developer Defendants profess an inability to discern which claims are being asserted against them such that they are unable to defend themselves, they nonetheless rally together to assert the litigation privilege with respect to each of the Plaintiff's claims.

"In *Myers v. Hodges,* 53 Fla. 197, 210, 44 So. 357, 361 (1907), [the Florida Supreme Court] recognized the principle of the litigation privilege in Florida, essentially providing legal immunity for actions that occur in judicial proceedings." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole,* 950 So. 2d 380, 383 (Fla. 2007). The privilege "extends to the protection of the judge, parties, counsel, and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceeding or as necessarily preliminary thereto." *Pledger v. Burnup & Sims, Inc.*, 432 So.2d 1323, 1325-26 (Fla. 4th DCA 1983) (quoting *Ange v. State*, 123 So. 916 (Fla. 1929)). The privilege "applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Echevarria,* 950 So. 2d at 384. "Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). Although Florida courts have construed the litigation privilege as an affirmative defense, it "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1276 (11th Cir. 2004) (internal quotations and citations omitted); *see also Blake v. Seterus, Inc.*, 2017 WL 543223, at *3 (S.D. Fla. Feb. 9, 2017) (King, J.).

In the Amended Complaint, Clarke alleges that the Developer Defendants collectively bullied and harassed anyone appearing to threaten their ability to develop Privé, and that Phelan, acting in his own and the other Developer Defendants' interests, manufactured a story regarding Clarke's conduct with respect to driving over the newly-constructed curb at her house in order to ensure that she would be charged with a felony. (Am. Compl. ¶¶ 100-01.) Specifically, and as already detailed, Phelan observed the Clarkes from outside of Cohen's home, and attempted to block them in before they could leave to retrieve Clarke's car from the marina. When he was unable to do so, he chased Mr. Clarke's car to the marina, where he spoke first to the Defendant Officers, and told them that Clarke had destroyed the Developer Defendants' property.

While Clarke was waiting in the squad car after being placed under arrest, Phelan spoke with the Defendant Officers, and concocted the false account of Clarke's conduct, he provided false information regarding the cost of repair for the damaged sidewalk to ensure that Clarke would be charged with a felony, and he, along with Cohen, provided sworn statements containing false accusations and damage estimates. (*Id.* ¶¶ 51, 64.) In addition, the Developer Defendants undertook efforts to impugn Clarke's reputation and to gain leverage in the pending State Lawsuit challenging the legality of the sidewalk, including publishing a blog called "Aventura Bytes," which they used to defame Clarke, Levensohn's making statements to the press to undermine Clarke's credibility, and Phelan's boasting that Clarke "was the b---- he had arrested." (*Id.* ¶¶ 61, 64-66.)

The Developer Defendants argue that because Clarke alleges that their actions were intended to harm her in response to her resistance to the sidewalk construction, their actions therefore bear some relation to the State Lawsuit, and they are thus shielded by Florida's broad litigation privilege. Although the litigation privilege offers broad protection, the Court disagrees that the actions alleged may be fairly viewed as required by, permitted by, or even related to, the State Lawsuit, nor were they taken in the course of judicial proceedings. Rather, as alleged, the Developer Defendants capitalized on the opportunity to take one of their most active opponents down a few notches. Allowing the litigation privilege to extend to the Developer Defendants' acts upon these facts would essentially provide carte blanche to engage in any type of behavior, as long as a there exists a pending court proceeding. This, the Court will not do.

### *(2) Failure to comply with Fed. R. Civ. P. 8*

The Developer Defendants next argue that the Plaintiff impermissibly lumps them together without distinguishing which one of them took the relevant actions. Therefore, the Developer Defendants argue that Counts IV-VI should be dismissed, or that the Plaintiff should be required to provide a more definite statement. The Plaintiff responds that she has properly identified two distinct groups of defendants—the City Defendants and the Developer Defendants—the relationship among them, and sets out her claims against each group.

Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), within the *Twombly-Iqbal* plausibility standard. Under this rule, when a complaint alleges that multiple defendants are liable for multiple claims, a court must determine whether the complaint gives fair notice to each defendant. Although a complaint against multiple defendants is usually read as making the same

allegation against each defendant individually, *Crowe v. Coleman,* 113 F.3d 1536, 1539 (11th Cir. 1997), "at times, a plaintiff's grouping of defendants in a complaint may require a more definite statement." *George & Co. v. Alibaba.com, Inc.*, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011) (citing *Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996) (internal quotations omitted). Indeed, a complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct" fails to satisfy Rule 8. *Lane v. Capital Acquisitions & Mgmt. Co.,* 2006 WL 4590705, at *5 (S.D. Fla. Apr.14, 2006). "A motion for a more definite statement is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." *Euro RSCG Direct Resp., LLC v. Green Bullion Fin. Servs.*, 872 F. Supp. 2d 1353, 1358 (S.D. Fla. 2012) (Cohn, J.) (internal quotation marks omitted).

The Amended Complaint does not violate Rule 8, nor is a more definite statement required. This is not a case in which Clarke lumps all the defendants together in each claim and fails to delineate which facts are applicable to each. As set forth by the Plaintiff, the Developer Defendants are all involved in the Privé development project. (Am. Compl. ¶ 2.) Clarke also alleges who each of the Developer Defendants are, and the relationships among them—specifically, that Phelan and Cohen "were acting on their individual behalf and in furtherance of the interests for the Developer Defendants as their agents." (Resp. at 14, ECF No. 22; Am. Compl. ¶ 20.) In addition, Clarke alleges that all of the Developer Defendants together participated in a scheme to bully and harass anyone standing in the way of their development efforts with respect to the Privé development project, in part by privately hiring police officers to monitor the construction, and attempting to negatively impact Clarke's reputation and credibility. Without citing case law in support, the Developer Defendants, like the City Defendants, attempt to impose a higher pleading standard upon the Plaintiff in this case, which the Court will not.

### *(3) Qualified privilege for negligent reporting claim (Count V)*

The Developer Defendants contend that they are entitled to a qualified privilege with respect to Clarke's claim for negligent reporting to the police, based upon *Valladares v. Bank of America Corp.*, 197 So. 3d 1, 11 (Fla. 2016), in which the Florida Supreme Court recognized such a privilege for mistaken, but good faith reports of suspected criminal activity. The Developer Defendants argue that in order to state a viable claim for negligent reporting to the police, the requisite level of malice involved is equivalent to the negligence necessary to sustain an award of punitive damages, and that the Plaintiff fails to plead

such malice. The Court disagrees, as the Developer Defendants read *Valladares* too narrowly.

In *Valladares*, the Florida Supreme Court held that
> a cause of action is available to one injured as a result of a false report of criminal behavior to law enforcement when the report is made by a party which has knowledge or by the exercise of reasonable diligence should have knowledge that the accusations are false or acts in a gross or flagrant manner in reckless disregard of the rights of the party exposed, or acts with indifference or wantonness or recklessness equivalent to punitive conduct.

197 So. 3d at 2. Thus, as this Court reads *Valladares*, if there are allegations showing knowledge on the part of an individual that the report to police is false, a cause of action for negligent reporting will lie.

Upon review, Clarke's allegations are sufficient to state a claim. In pertinent part, she alleges that the Developer Defendants engaged in a scheme to harass and bully anyone standing in the way of the Privé development; and to that end, that Phelan concocted a story in conjunction with the Defendant Officers that Clarke drove her car over a neighbor's curb and falsely reported the level of damage to the sidewalk construction in order to ensure that Clarke would be charged with a felony. Clarke further alleges that both Phelan and Cohen provided sworn statements containing such false accusations and damage estimates to the State Attorney's Office, which ultimately declined to prosecute. As a result, the Developer Defendants are not entitled to the qualified privilege.

### *(4) Defamation claims (Counts VI and VII)*

The Developer Defendants move to dismiss the defamation claims on the basis that Clarke fails to allege facts sufficiently with respect to who published the alleged statements to whom, and the time frame within which the statements were made, in part based upon the Plaintiff's lumping together the allegations against all the Developer Defendants. However, the Court has already rejected the lumping argument. The Developer Defendants also appear to suggest that a defamation claim asserted against a corporation requires additional information.

In order to state a cause of action for defamation under Florida law, a plaintiff must allege that "(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the plaintiff suffered damages as a result of the publication." *Five for Entertainment S.A. v. Rodriguez*, 877 F.

Supp. 2d 1321, 1328 (S.D. Fla. 2012) (Seitz, J.) (quoting *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006) (Seltzer, M.J.). A plaintiff must also allege "facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152, 157-58 (S.D. Fla. 1986) (King, J.). Upon review, Clarke identifies the makers of the allegedly defamatory statements, the audiences to whom these statements were made, and specifies that such statements were made following her release on bond. Thus, Clarke's allegations are sufficient.

In the Amended Complaint, she alleges that Lebehnson, Phelan and Cohen, individually and as agents of the Developer Defendant entities, made false statements to the Miami Herald and the South Florida Business Journal claiming that Clarke committed a crime in order to injure her reputation, that they maintained the "Aventura Bytes" website that falsely claimed that she was guilty of a felony, and made statements to the Miami Herald and Real Deal calling Clarke a "spoiled brat" engaged in a "college prank" to protect her property. In addition, Clarke has alleged oral defamation, which need not set out the allegedly defamatory statements verbatim. *Nezelek v. Sunbeam Television Corp.*, 413 So. 2d 51, 55 (Fla. 3d DCA 1982). Nor must a claim for oral defamation set out the defamatory statements with particularity. *Scott v. Busch*, 907 So. 2d 662, 667 (Fla. 5th DCA 2005). Thus, viewing the Amended Complaint in its entirety and construed in favor of the plaintiff, Clarke states sufficient claims against the Developer Defendants for defamation.

Lastly, the Developer Defendants argue for dismissal of the defamation claims on the basis that the statements are pure opinion, and therefore, not actionable. Under Florida law, "[p]ure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public." *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981). And while statements of pure opinion are not actionable, a defendant may not invoke the pure opinion defense if the underlying facts are false or inaccurately represented. *Lipsig v. Ramlawi*, 760 So. 2d 170, 184 (Fla. 3d DCA 2000). "The distinction between fact and pure opinion/rhetorical hyperbole is a critical one; to be actionable, a defamatory publication must convey to a reasonable reader [or listener] the impression that it describes actual facts about the plaintiff or the activities in which he participated." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006) (Seltzer, M.J.). Context is key to the determination. *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002). Taking into consideration the totality of the facts alleged in context, the

Court will not determine at this juncture that the statements made regarding Clarke's character and reputation are pure opinion as a matter of law.

**4. Conclusion**

For the foregoing reasons, the motions to dismiss (**ECF Nos. 18 and 19**) are **denied**. The Defendants shall file their answer(s) to the Amended Complaint by **October 11, 2017**.

**Done and ordered** at Miami, Florida on September 28, 2017.

_____
Robert N. Scola, Jr.
United States District Judge