United States District Court
for the
Southern District of Florida

| Dara Clarke, Plaintiff, | ) |
|---|---|
| | ) |
| v. | ) |
| | ) Civil Action No. 16-25217-Civ-Scola |
| | ) |
| Charles Phelan, and others, | ) |
| Defendants. | ) |

**Order on Motions for Summary Judgment**

This matter is before the Court upon two motions for summary judgment filed by the Defendants Terry Scott and Joseph Craig (together, the "Officers" or "Officer Defendants"), and the Defendant City of Aventura (the "City") (ECF Nos. 60, 119). After careful consideration of the motions, all opposing and supporting submissions, and the applicable case law, the Court **denies** the Officer Defendants' motion (**ECF No. 60**) and **grants** the City's motion (**ECF No. 119**).

1. **Introduction**

This case arises as a result of a bitter dispute over property rights between individual homeowners in the Island Estates development on the southern island located in Dumbfoundling Bay within the City, and a group of developers and their principals (collectively, the "Developer Defendants").[1] The Plaintiff Dara Clarke, and her husband David Clarke, as well as a number of other homeowners, have clashed with the Developer Defendants and the City over the construction of a sidewalk along a portion of land that the homeowners contend belongs to them, and on which the Developer Defendants maintain they had a right to build pursuant to an easement, and as a requirement by the City related to the development of high rise condominiums on the northern island. For purposes of this case, the Court is not concerned with the details or merits of the property dispute, but rather with the events that transpired on the evening of February 26, 2015.

2. **Relevant Facts**

At the time, the Plaintiff and her husband were staying at a condominium nearby while their home in the Island Estates development was being renovated. (Pl's. Statement of Material Facts ("Pl's. SOMF"), ECF Nos. 98,

---

[1] The Developer Defendants have filed their own motion for summary judgment (ECF No. 126).

135 at ¶ 8.)[2] On February 26, 2015, the Plaintiff had parked a Porsche sports utility vehicle ("SUV") on the swale in front of her home in the area where the Developer Defendants intended to build the sidewalk, near her other vehicle (a BMW), which she and her husband had left parked at the property the night before. (Defs.' Statement of Material Facts ("Defs'. SOMF"), ECF Nos. 64, 120 at ¶¶ 8-9; Pl's. SOF at ¶¶ 8-9.) The Developer Defendants began construction of the curb and sidewalk that morning near one of the Clarkes' neighbor's property (*id.* at ¶ 10), coincidentally immediately after a state appeals court reversed an injunction preventing the construction. In order to prevent further construction, Clarke sat down on the property to block the workers' progress. (*Id.* at ¶ 11.) She left at around midday, after moving the BMW to the marina parking area, and after learning about a development in related state court proceedings, with the understanding that the Developer Defendants would move forward with the sidewalk construction in her absence. (*Id.* at ¶ 12.)

When Clarke returned later that evening, the Developer Defendants had poured concrete into wood forms in an area of the swale that had been dug out. (*Id.* at ¶ 13.) Clarke then left again to pick up her husband, and upon their return, Mr. Clarke, who was driving, drove over the freshly-poured concrete in the SUV. (*Id.* at ¶¶ 14-15.) During this time, the Clarkes were observed by one of the Developer Defendants, Charles Phelan. (*Id.* at 16.) The parties exchanged "pleasantries," and the Clarkes left to retrieve their other vehicle, a BMW, which was parked at the Island Estate marina. (*Id.* at ¶ 18.) Phelan followed them to the marina, where Clarke exited the SUV, and got into the BMW. (*Id.* at ¶¶ 18-19.) Thereafter, Phelan returned to the Clarke's property, and upon observing Phelan heading in that direction, Clarke decided to follow him and call the police. (*Id.* at ¶ 20.) At some point, Phelan had contacted another Developer Defendant, Gary Cohen, who also contacted the police to report that the Clarkes had intentionally damaged the newly-constructed curb and sidewalk. (*Id.* at ¶ 21.)

At this juncture, the factual account of events diverges significantly. According to Clarke, she attempted to speak to the Officer Defendants first when they arrived on scene, but Craig told her that he would "get to [her] in a minute," and they instead began speaking to Phelan. (*Id.* at ¶¶ 22-23.) Phelan told the Officer Defendants that he had observed the Clarkes drive over the freshly poured concrete. (*Id.* at ¶ 23.) The parties dispute whether Clarke was agitated or not, with Clarke maintaining that she was calm, and the City and Officer Defendants contending that she was very upset and yelling. (*Id.* at ¶ 26.) Clarke further maintains that she never raised her voice, and attempted to

---

[2] The Court cites to both statements of material facts related to the City's and the Officers' motions because they are identical for the first thirty-seven (37) paragraphs.

show the Officer Defendants a survey of her home on her telephone, in order to better explain the situation to them. (Pl's. SOMF at ¶ 26.) The Officer Defendants, on the other hand, assert that Clarke shoved her phone into their faces and insisted that they look at the survey. (Defs'. SOMF ¶ 26.) Rigaud Seraphin, an individual who was providing security services for the worksite, and who arrived at the scene as events were unfolding, said in his statement that he heard a commotion and shouting from the development marina where he parked his car. (ECF No. 96-6 at 4-5.)

According to Clarke, she tried to show Officer Craig the survey on her phone (ECF No. 58-1 at 82-83), but Craig maintains that she was talking to Sergeant Scott (ECF No. 96-3 at 38). Clarke describes Craig as being dismissive and telling her that he didn't care, and that rich people think they can do whatever they want. (ECF No. 58-1 at 85.) Clarke never raised her voice (*id.* at 83). She then turned to Sergeant Scott and asked him why Craig was being rude to her. (*Id.* at 86.) At that point, the officers looked at each other, Scott stomped on Clarke's foot, and he grabbed his handcuffs and her right hand, which he twisted behind her back. (ECF No. 96-1 at 23.) Then Craig grabbed her other hand and twisted it behind her back, the Officer Defendants handcuffed her, put their knees into the back of her calves, and lifted her up by her arms. (*Id.*) Clarke maintains that the Officer Defendants held her up by her arms for between thirty seconds to a minute after she was handcuffed. (*Id.* at 24.) Clarke sustained injuries as a result, including a left shoulder impingement, a labrum tear, an inflamed rotator cuff, and herniation in her neck. (*Id.*; ECF No. 96-7.) Thereafter, the Officer Defendants dragged Clarke to the squad car.

Craig, on the other hand, stated that Clarke disobeyed an order from Scott to step back after she put the phone in his face. (ECF No. 96-3 at 44.) Craig describes Clarke as kicking, swinging, and trying to pull away when Sergeant Scott grabbed her arm after she disobeyed his command (ECF No. 96-3 at 42). Officer Craig said that he stepped in to help Sergeant Scott restrain Clarke after she disobeyed the command to step back (*id.* at 45). Officer Craig testified at his deposition that Clarke continued to struggle with the Officer Defendants as they pulled her toward the squad car. (*Id.* at 48.)

Sergeant Scott's account of the events is consistent with Officer Craig's, though Scott's testimony is that he felt that Clarke might actually injure him by hitting him in the face with her cell phone. (ECF No. 96-4 at 49.) Both the Officer Defendants deny that anyone stepped on Clarke's foot, or dug their knees into the back of her calves. Officer Worthington, another officer on-scene and the author of the police report, also testified that Clarke was very irate, and he was unable to speak to her as a result. (ECF No. 96-5 at 26-27.) In

addition, Officer Worthington's account of the incident is consistent with the Officer Defendants'. (*Id.* at 29, 34-36, 37, 40-41.)

The City has in place official policies regarding the use of force by its officers and procedures for investigation of complaints. (ECF Nos. 118-2, 118-3.) It is undisputed that Clarke did not lodge a complaint directly with the City after her arrest, but filed this lawsuit instead. According to Captain Castronovo, the individual in charge of overseeing the internal affairs unit at the Aventura police department (ECF No. 134-1 at 6), the department receives complaints in person, or online. (*Id.* at 14.) Captain Castronovo also testified that it is the department's policy and practice that any complaint of excessive force of which the department becomes aware is investigated (*id.* at 16-17), and during deposition, Captain Castronovo detailed the investigation procedure. Captain Castronovo also testified that in the past ten years, there had not been one finding of excessive force by internal affairs or through the citizen complaint process against any of the City's officers. (*Id.* at 27.)

3. **Legal Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### 4. Analysis

#### A. The Officer Defendants' motion (ECF No. 60)

The Officer Defendants have moved for summary judgment upon Clarke's claim for excessive force against them, arguing that the force used was *de minimis*, and in any event, that they are entitled to qualified immunity. However, as previously noted, virtually every fact concerning the circumstances of the Plaintiff's arrest in this case is disputed. The Defendants argue nevertheless that under the Plaintiff's version of the facts, they are entitled to summary judgment. The Court considers each argument in turn.

##### i. The force used was not *de minimis*

Excessive force claims are properly analyzed under the Fourth Amendment's objective reasonableness standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007). "That standard asks whether the force applied is objectively reasonable in light of the facts confronting the officer, a determination we make from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight." *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (internal quotations omitted). At the summary judgment stage, once the court determines the relevant set of facts and draws inferences in favor of the non-moving party as supported by the record, the reasonableness of an officer's actions is a "pure question of law." *Scott*, 550 U.S. at 381 n.8.

In determining whether the force used was reasonable, the Supreme Court considers a number of factors, including "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Williams v. Bauer,* 503 F. App'x 858, 861 (11th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Eleventh Circuit also instructs that "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). In addition, the Court considers "the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted." *Mobley*, 783 F.3d at 1353 (internal citation and alteration omitted).

Here, under the Plaintiff's version of the facts, the Officer Defendants' use of force was not reasonable. First, although Sergeant Scott maintains that he felt a threat of potential injury from Clarke thrusting her phone into his face, the Officer Defendants have presented no other evidence to indicate that Clarke posed a risk to their safety or the safety of others, and Sergeant Scott's contention is in stark conflict to Clarke's assertion that she was calm throughout the exchange with the Officer Defendants and that the Officer Defendants were not interested in listening to her. In addition, the Officer Defendants are physically much larger than Clarke, who is a few inches over five feet tall, and almost half the weight of each of the Officer Defendants, and there is no evidence that Clarke was armed, or otherwise dangerous.

Second, the potential crimes for which Clarke was arrested—disorderly conduct and criminal mischief—are not severe crimes that would appear to warrant the use of force under the circumstances in this case.

Third, there is no evidence that Clarke posed a risk of flight. The Court also finds significant the fact that Sergeant Scott had interacted with Clarke earlier the same day when Clarke called the police to report that the construction crew was still working past the applicable cut-off time (ECF No. 96-4 at 32) and, according to Officer Worthington, officers were aware that there was an ongoing problem involving the homeowners and developers, and that their objective was to keep the peace (ECF No. 96-5 at 85.) Thus, even assuming that Clarke was not as calm as she remembers, the proportionality of the force used by the Officer Defendants in carrying out her arrest is further undermined.

The Officer Defendants argue that numerous courts have found allegations of force far greater than those involved in this case to constitute *de minimis* force relying on a number of cases, to which Clarke responds that all involved some form of danger to officers, attempts to flee, or minor or no injury to the plaintiff. Indeed, upon review the Court agrees that the cases relied upon by the Officer Defendants do include one or more of such concerns, and are therefore distinguishable from the present case. *See Croome v. Balkwill*, 645 F.3d 1240, 1252-53 (11th Cir. 2011) (finding the force used to be *de minimis* where the officers used force in conjunction with the execution of a search warrant of a house they knew to be involved in the distribution of controlled substances, and for the safety of the officers and the public); *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (finding the force used by officers to be *de minimis* where the plaintiff sustained minor bruising that healed without treatment); *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997) (the force was minimal where the plaintiff was a man resembling a suspect who had earlier harassed a woman); *Williams v. Sirmons*, 307 F. App'x 354, 360 (11th Cir. 2009) (the use of force was *de minimis* where the plaintiff had

attempted to flee from the officers); *Woodruff v. City of Trussville*, 434 F. App'x 852, 855 (11th Cir. 2011) (force was *de minimis* where plaintiff violated traffic laws and drove in a reckless manner); *Bryan v. Spillman*, 217 F. App'x 882, 887 (11th Cir. 2007) (force was *de minimus* where undisputed facts demonstrated that the plaintiff was aggressive and suffered temporary pain, requiring no treatment and resulting in no lasting effects); *Holmes v. Hale*, 701 F. App'x 751, 755 (11th Cir. 2017) (force was not excessive where officers executing a warrant pulled plaintiff from a closet where he was hiding, and the allegations of force related to a non-party officer).

Moreover, in the cases relied upon by the Officer Defendants, the underlying material facts of what transpired were not in dispute. For example, in *Williams*, the evidence presented by the plaintiff herself showed that she ran away from the deputies, no force was used against her after she was restrained, and she had not sustained any injury as a result. 307 F. App'x at 361. That is not the instant case, where the record reflects that the Officer Defendants hoisted Clarke up by the arms after she was already cuffed. "The application of gratuitous force on an already-handcuffed and compliant detainee or arrestee constitutes excessive force in violation of the Fourth Amendment, even if there is no visible or compensable injury." *Gomez v. United States*, 601 F. App'x 841, 850 (11th Cir. 2015).

Indeed, the Eleventh Circuit applies a different analysis to cases in which force is used against unhandcuffed individuals from the analysis applied to cases in which force is used against individuals who are handcuffed. *See id.* at 851 (holding that because force was applied before the plaintiff was handcuffed, the "allegations are thus most closely analogous to the line of cases in which this Court has held that the amount of force used on unhandcuffed individuals was de minimis and did not rise to excessive force that could violate the Fourth Amendment."); *see also Slicker v. Jackson*, 215 F.3d 1225, 1232-33 (11th Cir. 2000) (holding that testimony that plaintiff did not struggle or resist officers after being arrested and handcuffed, but nevertheless officers repeatedly hit his head on the pavement, kicked him, and knocked him unconscious, was "sufficient to raise a question of fact as to whether the officers' actions constituted excessive and not de minimis force."). Thus, a genuine issue of material fact remains with respect to the Officer Defendants' use of force.

### ii. The Officer Defendants are not entitled to qualified immunity

The Officer Defendants next argue that even if the use of force was not *de minimis*, they are nevertheless entitled to qualified immunity. The Court disagrees.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quotation marks omitted). "Whether a defendant is entitled to qualified immunity is a question of law, in other words, whether the law at the time of the incident was clearly established so that a reasonable person should have known that he was violating it." *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003). To claim qualified immunity, a public official must first establish that he was engaged in a "discretionary duty." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). Here, the parties do not dispute that the Officer Defendants were engaged in a discretionary duty.

Once it is established that a public official was acting in a discretionary capacity, the burden shifts to the plaintiff to establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 526 (11th Cir. 2010). In the context of excessive force claims, the Eleventh Circuit has "noted that generally no bright line exists for identifying when force is excessive; we have therefore concluded that unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000). Thus, "qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in the position of the defendant officer to conclude the force was unlawful." *Nolin*, 207 F.3d at 1255 (internal quotation marks and alterations omitted) (citing *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified* 14 F.3d 583 (11th Cir. 1994)).

Here, the Officer Defendants have failed to establish that the force used against Clarke was *de minimis*. Moreover, under Clarke's version of the facts, their actions violated her Fourth Amendment rights. *See Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011) (stating "that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment.").

Therefore, the Court must next determine whether that right was clearly established at the time of Clarke's arrest. "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009)

(internal citations omitted). As previously noted, there is a critical difference between the use of force against unrestrained individuals and individuals who have already been handcuffed, which was evident in the case law at the time of Clarke's arrest. *See Saunders v. Duke*, 766 F.3d 1262, 1265, 1267-68 (11th Cir. 2014) (citations omitted) (reversing dismissal of plaintiff's Fourth Amendment claim because the complaint alleged that officers slammed his head into the ground with extreme force even though the plaintiff was handcuffed and was not resisting or attempting to flee); *Slicker*, 215 F.3d at 1232-33 (11th Cir. 2000) (evidence that plaintiff did not struggle after being handcuffed was sufficient to raise a question of fact as to the use of force applied once he was restrained); *Hadley v. Gutierrez,* 526 F.3d 1324, 1330 (11th Cir. 2008) (officer's punch constituted excessive force where the suspect was handcuffed and not struggling or resisting). In contrast, the cases upon which the Officer Defendants rely involved uses of force against unrestrained individuals. In fact, the case upon which the Officer Defendants rely to argue for a finding of *de minimis* force in this case involved force against an unrestrained individual and explicitly indicates the distinction. *See Durruthy*, 351 F.3d at 1094. Furthermore, even if not plainly apparent in extant case law, the importance of the distinction was clearly indicated by the Eleventh Circuit in *Gomez*, which was also decided prior to Clarke's arrest. 601 F. App'x at 850-851.

Thus, the Officer Defendants are not entitled to qualified immunity and their motion for summary judgment is due to be denied.

### B. The City's motion (ECF No. 119)

The City has also moved for summary judgment on Clarke's section 1983 claims in Counts 2 and 3, arguing (1) that Clarke has no valid section 1983 claim because the Officer Defendants used *de minimis* force, (2) that even if the Officer Defendants used greater force no evidence establishes that the City adopted a custom and policy that permitted its officers to use excessive force, and (3) that no evidence establishes that the City failed to take disciplinary action despite knowledge of a persistent and widespread use of excessive force by its police officers. Because the Court has already rejected the contention that the Officer Defendants used *de minimis* force, the Court considers the City's remaining arguments in turn.

### i. The evidence of policy or custom is insufficient

Municipalities and other local government entities are subject to liability under Section 1983 and may be sued directly for relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

A municipality or other local government entity "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Only if the alleged constitutional violations resulted from a custom, policy, or practice of a local government entity may that entity be held liable. *Id.* at 694; *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987); *see also Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir. 1990) ("Governmental entities may be held liable under section 1983 when a governmental 'policy or custom' is the 'moving force' behind the constitutional deprivation.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell*, 436 U.S. at 694.

A policy or custom "is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *German v. Broward Cty. Sheriff's Office*, 315 F. App'x 773, 776 (11th Cir. 2009) (citing *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)). For example, even where a municipality provides rules and regulations for the operation of its police department, if those rules are repeatedly violated and the municipality has knowledge of the conduct but fails to rectify the situation then it may be liable. *Depew*, 787 F.2d at 1499 ("The continued failure of the [municipality] to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983."). "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (internal citations omitted).

The City argues that there is no evidence to establish a City custom or policy of allowing its officers to use excessive force. In support, it points to its official policies regarding responses to resistance and internal affairs investigations and complaints (ECF Nos. 118-3, 118-2), and departmental records detailing the outcome of the investigations of twenty-six complaints, including forty-one allegations, of excessive force against City officers. (ECF No. 118-6.) Indeed, of the complaints, only one was sustained as to improper procedure, not excessive force, with respect to an officer not a party to this action. (*Id.* at 2; ECF No. 134-1 at 25-26.) Moreover, Sergeant Scott was never involved in any internal affairs investigations, and the two excessive force citizen complaints against him were determined to be unfounded (ECF No. 118-6 at 1, 3; ECF No. 134-1 at 58), and the citizen complaints against Officer Scott were determined to be unfounded or not sustained. (ECF No. 118-6.)

Clarke responds that even though the City's policies require that civil rights violations be investigated, only six of the forty-one allegations of

excessive force were elevated beyond the level of citizen complaint and to an internal affairs investigation. Moreover, Clarke argues that the City records themselves demonstrate that a widespread practice of excessive force has been in place, reflected in several of the incidents involving Officer Craig and Sergeant Scott, and she urges the Court to deny summary judgment based upon the City's failure to investigate her complaint, the City Attorney's comment that her claims are completely baseless, and Captain Castronovo's failure to explain specifically how the City conducted the investigations of each specific claim of excessive force in the past ten years.[3]

However, this is insufficient evidence of a custom or policy, especially where the City indeed has policies and procedures in place regarding internal affairs investigations and complaints, and response to resistance by its officers, and beyond Clarke's contentions, there is no evidence that past investigations were not conducted in accordance with those policies. Moreover, Clarke has offered no further evidence beyond the existence of prior complaints, and her argument that the investigations undertaken were insufficient, to establish a custom or policy. Indeed, Clarke has presented no evidence to indicate that the City was aware of past police misconduct – especially because there is no evidence in the record with respect to the merits of the other complaints and investigations. *Brooks*, 813 F.2d at 1193. Nor has Clarke presented any evidence to support her argument that the filing of this lawsuit should have triggered an internal investigation by the City, especially when Captain Castronovo testified that the police receive complaints either in person or online. Accordingly, the City is entitled to summary judgment on Count 2.

### ii. There is no evidence that the City ratified a custom or policy of excessive force

The City argues that it is entitled to summary judgment upon Clarke's claim based upon a ratification theory because Clarke never complained to the City about the Officer Defendants' use of force. Clarke responds that the City's failure to investigate her claim after receiving notice of this lawsuit, and the fact that Sergeant Scott testified at deposition that he did not recall prior identical claims against him, or being interviewed in connection to them, demonstrates that the City ratified the use of excessive force by its officers.

"[A] persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby

---

[3] Clarke appears to suggest that the Court should draw an inference in her favor based upon Captain Castronovo's inability to testify in detail regarding the topics set forth on the notice of his deposition; however, Clarke may not rely on the lack of evidence with respect to a material part of her claim to defeat summary judgment. The insufficiency of Captain Castronovo's testimony would have been properly addressed by means of a discovery motion before the Magistrate Judge.

establishing a 'custom' within the meaning of *Monell*." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) ("A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference toward the police misconduct.") (citation omitted). A plaintiff advancing a ratification theory in support of his *Monell* claim must still establish a "widespread practice" of the relevant constitutional violations. *See, e.g., Davis v. City of Leesburg*, 2014 WL 4926143, at *27 (M.D. Fla. Sept. 30, 2014); *Windham v. City of Fairhope, Ala.*, 20 F. Supp. 3d 1323, 1343 (S.D. Ala. 2014), *aff'd*, 597 F. App'x 1068 (11th Cir. 2015). The prior conduct must also be sufficiently similar. *See Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (Lenard, J.) ("Prior incidents also must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim.") (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005); *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998)). Further, "[f]or plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory . . . they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis . . . ." *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004) (quoting *Thomas v. Roberts*, 261 F.3d 1160, 1175 n.12 (11th Cir. 2001)). Finally, "[a] § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." *Troupe v. Sarasota Cty.*, 419 F.3d 1160, 1165 (11th Cir. 2005).

    The Court finds that there is insufficient evidence to support Clarke's claim against the City upon a ratification theory, largely for the same reasons that her claim based on policy or custom fails. First, the records of prior incidents provided by Clarke (ECF Nos. 134-3, 134-4, 134-5, 134-6, 134-7) do not demonstrate that these incidents involved facts that were substantially similar to the incident involving Clarke, and the propriety of even considering these reports on summary judgment is dubious. *See Shehada*, 965 F. Supp. 2d at 1374 ("While factual findings in internal affairs reports are generally admissible under an exception to the hearsay rule, Fed. R. Evid. 803(8), summaries of interviews that are contained in those reports are double hearsay that cannot be admitted at trial or considered on summary judgment.") (quoting *Jessup v. Miami-Dade Cty.*, 697 F. Supp. 2d 1312, 1322 (S.D. Fla. 2010) (Seitz, J.) (alterations omitted)). Second, there is no evidence in the record that any of the excessive force claims against the Officer Defendants had any merit. Third, although Clarke maintains that the investigation of prior

incidents was insufficient, she points to no record evidence to support her argument. Indeed, "the failure to investigate or take disciplinary action following the subject incident cannot support a claim of municipal liability, because the after-the-fact inadequate investigation or discipline could not have been the legal cause of the plaintiff's injury." *Id*. Thus, the City is entitled to summary judgment upon Count 3.

**5. Conclusion**

For the reasons set forth above, the Court **denies** the Officer Defendants' motion for summary judgment (**ECF No. 60**), and **grants** the City's motion for summary judgment (**ECF No. 119**).

**Done and ordered** at Miami, Florida on February 20, 2018.

Robert N. Scola, Jr.
United States District Judge